**James Randall SMITH, David A. Jones, David Mitcham, and Charles Freeman, Relators,**

v.

**J.F. FLACK, County Auditor, Jon Lindsay, County Judge, El Franco Lee, Jim Fonteno, Bob Eckels, and E.A. Lyons, Commissioners, Respondents.**

No. 69676.

Court of Criminal Appeals of Texas, En Banc.

April 22, 1987.

---

3. 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

James Randall Smith, David A. Jones, David Mitcham, Charles Freeman, Houston, for relators.

Mike Driscoll, Co. Atty., David R. Hurley, Lupe Salinas and Joan M. Denton, Asst. Co. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This is an original mandamus proceeding brought by four court-appointed criminal defense attorneys (relators) who seek to compel the Harris County Auditor and Commissioners Court (respondents) to act pursuant to their statutory authority by paying attorney fees in accordance with Article 26.05, § 1(a) & (e), V.A.C.C.P. (Supp.1987).[1] We will conditionally grant relief.

---

**1.** Article 26.05, § 1(a) & (e), supra, provides:

Sec. 1. A counsel appointed to defend a person accused of a felony or a misdemeanor punishable by imprisonment, or to represent an indigent in a habeas corpus hearing, *shall be paid from the general fund of the county* in which the prosecution was instituted or habeas corpus hearing held, *according to the following schedule:*

(a) For each day or a fractional part thereof in court representing the accused, *a reasonable fee to be set by the court but in no event to be less than $50;*

(e) For the prosecution to a final conclusion of a bona fide appeal to a court of appeals or the Court of Criminal Appeals, *a reasonable*

*fee to be set by the court but in no event to be less than $350[.]*

(emphasis added).

Relators also argue that the county's failure to pay court-appointed attorney fees interferes with a defendant's right to counsel under the federal constitution. U.S. Const. amend. VI. However, we need not address that claim because we will grant relief on the statutory claim. But cf. *Martin County v. Makemson*, — U.S. —, 107 S.Ct. 908, 93 L.Ed.2d 857 (1987) (White, J., dissenting to denial of petition for writ of certiorari) (discussing conflicting decisions on whether Sixth Amendment requires states to compensate attorneys for representation of indigent defendants).

## I.

On June 4, 1986,[2] a majority of the "Board of District Judges Trying Criminal Cases [in Harris County]," hereinafter referred to as the "Board of Judges," agreed upon a schedule for setting fees for court-appointed attorneys in criminal cases.[3] In connection with the adoption of the fee schedule, Honorable Jon N. Hughes, acting as "Administrative Judge of District Judges Trying Criminal Cases," issued the following orders, which took effect June 5:

IT IS THEREFORE ORDERED that the Auditor of Harris County is not to approve payments stated on the claim for any fee for court appointed attorneys in excess of the maximum fees stated above.

IT IS FURTHER ORDERED that in the event that a claim is received in excess of the maximum as stated above, the claim is to be returned to the Administrative Offices of the District Courts for a judicial review.

On August 13, the Board of Judges amended their local rules to conform with this order by adding the following: "the Board of District Judges Trying Criminal Cases shall establish a fee schedule for court appointed attorneys stating a minimum and maximum for the categories as provided in Art. 26.05 of the Texas Code of Criminal Procedure." Rules of the Judicial District Courts of Harris County, District Courts Trying Criminal Cases, R. VI(E).

Meanwhile, on July 15, the County Auditor requested by letter an Attorney General's opinion "regarding the constitutionality and enforcement of the Order setting out the maximum amount of payment to court-appointed attorneys in Harris County...." (Relators' Application for Writ of Mandamus, Exhibit 2). In that letter, the County Auditor took the position that the fee schedule was a valid order, promulgated pursuant to the Court Administration Act, V.A.C.S., Article 200a–1 (Supp.1987).

On July 22, the Attorney General responded by informing the County Auditor that his request for an opinion should be directed to the local county or district attorney. See V.T.C.A., Government Code § 41.007 (Pamphlet 1987). However, the Attorney General also referred the County Auditor to Article 26.05, supra, and Attorney General Opinion H–499 (1975), which states:

The commissioners court of a county is under a duty to budget and order paid the amount of any reasonable attorney's fee properly set by a criminal court judge pursuant to article 26.05, Tex.Code Crim. Proc., for the representation of indigent defendants. The trial judge's order can be overturned only on a showing that it was so arbitrary, unreasonable and capricious as to amount to an abuse of discretion.

*Id.* at 4.[4]

Subsequently, the County Auditor recommended to the Commissioners Court that it adopt Judge Hughes' order. On July 29, the Commissioners Court adopted Judge Hughes' order.

On July 28, Honorable Woody Densen, Judge of the 248th District Court of Harris County, entered an order awarding payment of attorney fees to Relator James R. Smith in the amount of $2,500 for prosecution of an appeal. See Article 26.05, § 1(e), supra. Smith then presented his claim to the Respondent County Auditor for payment. Because the claim exceeded the maximum amount established in the Board of Judges' fee schedule, the County Audi-

---

**2.** All dates refer to 1986 unless otherwise indicated.

**3.** The "Board" only includes judges from 22 of the district courts in Harris County. But cf. V.T.C.A., Government Code § 24.101 et seq. (Pamphlet 1987) (listing district courts in Harris County). According to the respondents, there were 17 judges from those courts present at the meeting establishing the fee schedule, 15 of whom voted in favor of the schedule. The Board of Judges, in an amicus curiae brief, do not contradict these facts.

**4.** The Attorney General also referred the County Auditor to Attorney General opinions JM–403 (1985) and H–789 (1976). However, those opinions are not relevant to the instant case.

tor immediately forwarded the claim to the Board of Judges for judicial review.[5]

Smith's claim was then reviewed by a "Judges' Committee," which consisted of three district judges selected from the Board of Judges. On August 14, the committee ordered that Smith's claim be denied and that a payment of $1,700 be made instead. On August 19, the County Auditor forwarded Smith's claim to the Commissioners Court, recommending approval of the reduced amount. On August 26, the Commissioners Court approved the reduced fee for payment.

An identical sequence of events occurred for Relators David A. Jones, David Mitcham and Charles Freeman. In each case, the County Auditor automatically transferred the relator's claim to the Board of Judges for a judicial review upon observing that the claim exceeded the maximum fee for that particular service as set by the fee schedule established by the Board of Judges and adopted by the Commissioners Court. The claims were then denied and a reduced amount was approved by a Judges' Committee. On August 5, the Commissioners Court, following the recommendation of the County Auditor, approved each of the reduced fees for payment. Jones presented a claim for $250 and was paid $150. Mitcham presented a claim of $250 and was paid $150. Freeman presented a claim of $500 and was paid $425.

Before addressing the merits of relators' application for a writ of mandamus, we must first determine whether this Court has jurisdiction over the instant cause.

## II.

■ This Court has the power to issue writs of mandamus in all "criminal law matters." Tex. Const. art. V, § 5; *State ex rel. Wade v. Mays*, 689 S.W.2d 893, 897 (Tex.Cr.App.1985). The term "matter," when used in the context of a legal dispute, generally refers to the "subject of [the] litigation." Black's Law Dictionary 882 (5th ed. 1979). The subject of the mandamus litigation ("matter") is modified in Article V, § 5, supra, by the terms "criminal law." Therefore, when read as a whole, Article V, § 5, supra, grants this Court the power to issue writs of mandamus when a criminal law is the subject of the litigation. See *Dickens v. Second Court of Appeals*, 727 S.W.2d 542, 545 (Tex.Cr.App.1987) (criminal discovery law was subject of litigation).

■ Relators argue that the instant case involves a criminal law matter because they seek relief pursuant to Article 26.05 of the Code of Criminal Procedure. See *Weiner v. Dial*, 653 S.W.2d 786 (Tex.Cr.App.1983). We agree.

In *Weiner*, an attorney sought to force a trial judge to award him fees under Article 26.05, supra, for work not authorized by the trial court. This Court held that "the provision for appointment and compensation of attorneys to represent indigents in criminal [cases, see Article 26.05, supra,] is certainly itself a criminal law matter." *Weiner*, 653 S.W.2d at 787.

In the instant case, four court-appointed attorneys are challenging the manner in which the County Auditor and Commissioners Court have paid claims for attorney fees.[6] The fees were originally set by a trial judge under the authority of Article 26.05, supra.

While it is true that the instant suit does not seek to compel a trial judge to *award* fees as in *Weiner*, supra, relators are attempting to *enforce* a trial judge's orders for attorney fees that arose from criminal cases and were issued pursuant to a provision of the Code of Criminal Procedure. Undoubtedly, the enforcement of an order issued pursuant to a criminal statute is a

---

5. The fee schedule established a maximum payment of $1,500 for the prosecution of a noncapital appeal. Respondents acknowledged during oral argument that they had not yet made any independent, internal determination whether Smith's claim should be approved or paid. Instead, the decision to refer the claim to the Board of Judges was based solely on the fact that the claim exceeded the amount specified in the fee schedule.

6. Respondents have not raised any objection to the consolidation of the claims of these four relators into a single application for mandamus.

criminal law matter as much as the issuance of the order itself, even if it requires this Court to examine civil laws in the process. Were it otherwise, this Court's power to decide criminal law matters would be seriously eroded or eliminated altogether by the incidental presence of civil law matters. Cf. *Commissioners' Court v. Beall*, 98 Tex. 104, 81 S.W. 526 (1904) (discussing respective duties of Supreme Court and Court of Criminal Appeals to decide civil and criminal law). We hold that the subject of the instant lawsuit directly involves a criminal law matter and is, therefore, within this Court's mandamus jurisdiction. We now address the merits of relators' claims for payment of attorney fees, focusing particularly on whether the equitable remedy of mandamus is available to the relators.

### III.

■ This Court has adopted the traditional two-part test for determining whether writ of mandamus should issue. *State ex rel. Vance v. Routt*, 571 S.W.2d 903 (Tex.Cr.App.1978). To obtain relief through a writ of mandamus, a relator must establish that 1) the act he seeks to compel is ministerial, rather than discretionary, in nature and 2) no other adequate remedy at law is available. *Id.*; see also *Ordunez v. Bean*, 579 S.W.2d 911, 913 (Tex.Cr.App.1979).

### A.

"An act is 'ministerial' if it constitutes a duty clearly fixed and required by law." *Curry v. Gray*, 726 S.W.2d 125, 128 (Tex. Cr.App.1987) (opinion on rehearing) (citing *Wade v. Mays*, supra). It must be "accomplished without the exercise of discretion or judgment." *Id.*

7. For example, the trial court may award no less than $350 "[f]or prosecution to a final conclusion of a bona fide appeal to a court of appeals or the Court of Criminal Appeals." Article 26.05, § 1(e); see also *id.* at § 1(a)–(d), (f).

8. Prior to August 30, 1971, the Legislature had set both minimum and maximum fees for court-appointed attorneys. See Acts 1969, 61st Leg., p. 1054, ch. 347, § 1. However, the 62nd Legislature rewrote Article 26.05 and removed all

In the instant case, relators argue that the County Auditor and Commissioners Court have a ministerial duty to pay attorney fees awarded by the trial court pursuant to Article 26.05, supra, or establish, through a lawsuit, that the fees are unreasonable. See *Commissioners Court v. Martin*, 471 S.W.2d 100, 104 (Tex.Civ.App. —Amarillo 1971, writ ref'd n.r.e.). But cf. *Smith v. McCoy*, 533 S.W.2d 457, 459 (Tex. Civ.App.—Dallas 1976, writ dismissed).

■ The provisions of Article 26.05, supra, should be liberally construed to attain the objectives intended by the Legislature. In construing Article 26.05, supra, this Court is guided by the Code Construction Act. See V.T.C.A., Government Code § 311.002(2) (Pamphlet 1987); see also *Barbee v. State*, 432 S.W.2d 78 (Tex.Cr.App. 1968). However, we need not use those construction aids if the language of the statute is clear and unambiguous as to legislative intent. *Dickens*, at 547.

■ Through Article 26.05, the Legislature has provided in plain language that court-appointed attorneys *"shall* be paid from the general fund of the county in which the prosecution was instituted." Article 26.05, § 1, supra (emphasis added). It has granted the trial court sole authority to set the fees to be paid to court-appointed attorneys. *Id.* at § 1(a)–(f), supra ("to be set by the court"). While the trial court is limited by the statutory minimum fees allowed for particular types of cases,[7] the Legislature has expressly avoided setting specific *maximum* limits on the size of court-appointed attorney fees.[8] Instead, it has granted the trial court sole authority to set a "reasonable fee." *Id.* at § 1(a)–(f). Given such unambiguous language, we find that Article 26.05 clearly places a mandato-

references to maximum fees. It replaced such language with the requirement that the trial court set a "reasonable fee," which shall be no less than the amounts specified for particular types of cases. See Acts 1971, 62nd Leg., p. 1777, ch. 520, § 1. That requirement has been retained despite subsequent amendments to Article 26.05. See Acts 1973, 63rd Leg., p. 1126, ch. 426, art. 3, § 3; Acts 1981, 67th Leg., p. 803, ch. 291, § 106.

ry duty upon the county to pay court-appointed attorney fees.[9]

■ Respondents argue that their mandatory duty to pay court-appointed attorney fees under Article 26.05, supra, is discretionary as to the *amount* of the fee to be paid because they have statutory authority to use discretion in deciding the "reasonableness" of such fees. However, we need not address that arguement because we find that the respondents did not reject relators' claims on that basis. Instead, respondents rejected relators' claims without considering the reasonableness of the amounts. Respondents automatically rejected those claims upon finding that the claims exceeded the amounts authorized in the fee schedule established by the Board of Judges and adopted by the Commissioners Court. Cf. *Chrestman v. Tompkins*, 5 S.W.2d 257 (Tex.Civ.App.—Dallas 1928, writ ref'd) ("In this situation it is not necessary for us to determine the scope of the discretion committed to the auditor; it being only necessary for our present purpose to decide whether or not he was empowered to exercise the discretion attempted.").

■ The Legislature has required that "[a]ll claims, bills and accounts against the county be filed in ample time for the auditor to *examine and approve* same before the meetings of the commissioners court. No claim, bill or account shall be allowed or paid until it has been *examined and approved* by the county auditor thereon." V.A.C.S., Article 1660 (1962) (emphasis added). Under that authorizing statute, a county auditor must make an independent examination of a claim and approve it before submitting it to a commissioners court. Assuming *arguendo* that such an examination involves discretionary power, the Legislature has not provided a county auditor with any authority to delegate that duty to another legal entity or office. In other words, a county auditor has "a duty clearly fixed and required by law" to perform his statutory duties within his own office. See *Curry*, supra.

■ In the instant case, the County Auditor has not examined the claims for attorney fees awarded to relators pursuant to Article 26.05, supra. Instead, the County Auditor referred the claims to the Board of Judges—a body with no privity to the County Auditor's office. Subsequently, the County Auditor accepted the Board of Judges' adjustment of relators' claims, again without following his statutory duty to examine and approve those claims himself. See note 5, *ante*, at 788. Given these circumstances, we find that relators correctly seek to compel the County Auditor to perform a ministerial act; relators can seek to compel the County Auditor to refrain from abdicating his duties to the Board of Judges and "to examine and approve" their claims for attorney fees. Article 1660, supra.

■ The Texas Constitution provides that a commissioners court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." Tex. Const. art. V, § 18(b). The Legislature thereafter provided that "[e]ach commissioners court shall ... [a]udit and settle all accounts against the county and *direct their payment*." V.A.C.S., Article 2351(10) (Supp. 1987) (emphasis added). A commissioners court is required to independently perform those duties. Even if those duties are considered discretionary, a commissioners court must have statutory authority to abdicate them to some other legal entity or office. See *Guerra v. Rodriguez*, 239

9. We also note that the legislative history of Article 26.05, supra, confirms this construction. Under a predecessor statute, which did not contain the "reasonable fee" standard, the Legislature had provided that "[t]he Commissioners Court of any county in the State may determine within its discretion whether or not such county shall pay the fees provided herein." Acts 1951, 52nd Leg., p. 25, ch. 19. However, that provision was specifically repealed in 1959 and has never been revived. See Acts 1959, 56th Leg., 2nd C.S., p. 147, ch. 31, § 2. As Presiding Judge Onion noted in his commentary on the 1959 version of Article 26.05, payment of court-appointed fees "have been made mandatory whereas under the old article [494a] the fee schedule was discretionary with the trial judge and the Commissioners Court of the County." Onion, *Special Commentary*, 2 Tex.Code Crim. Pro. 276 (Vernon 1966).

S.W.2d 915, 919–20 (Tex.Civ.App.—San Antonio 1951, no writ) ("In the absence of statutory authority, the powers of a Commissioners' Court involving the exercise of judgment and discretion can not be delegated....").

In the instant case, the Commissioners Court relinquished its financial responsibilities to the Board of Judges by relying upon the Board of Judges for judicial review and ultimate adjustment of relators' claims. However, the Legislature has not provided the Commissioners Court with the authority to surrender such duties to the Board of Judges.[10] The Commissioners Court has "a duty clearly fixed and required by law" to perform those financial duties itself. See *Curry*, supra. Given these circumstances, we find that relators correctly seek to compel the Commissioners Court to perform a ministerial act; relators can require the Commissioners Court to refrain from abdicating its duties to the Board of Judges and to "[a]udit and settle" their claims for attorney fees and to "direct their payment." Article 2351, supra.

■■■ Respondents, and the Board of Judges in its amicus curiae brief, argue that the respondents' payment of lesser fees was proper because of the fee-setting limitations placed on trial judges by Rule VI(E), which was promulgated pursuant to the Court Administration Act (hereinafter "Act"), Article 200a–1, supra. We disagree.

The Act provides courts with a direct statement of legislative intent. Acts 1985, 69th Leg., ch. 732, § 1. In part, the Legislature intended for the Texas Judicial Council and the Supreme Court to prepare a plan for reapportionment of the supreme judicial districts. *Id.* However, it had another reason for passing the Act:

It is the further intent of the legislature that the administration of trial courts in this state be improved in order to provide all citizens of this state a prompt, effi-

cient, and just hearing and disposition of all disputes before the various courts, and that all district and statutory county courts adopt rules of administration as provided by this Act.

*Id.*

Consistent with that intent, the Legislature provided that "[t]he district and statutory county court judges in each county shall, by majority vote, adopt local rules of administration." Article 200a–1, § 5.003(a), supra. Those rules are specifically limited to providing for the various administrative needs of the district and statutory county courts. See Article 200a–1, § 5.003(b)(1)–(5), supra. However, "[t]he rules may provide for any other matter necessary to carry out this Act or to improve the administration and management of the court system and its auxiliary services." Article 200a–1, § 5.003(c), supra.

The Board of Judges relies upon this last provision for its authority to promulgate Rule VI(E), which binds all district judges trying criminal cases to a schedule for setting court-appointed attorney fees. However, such a construction of this provision will not support such a claim.

We find that it was not the intent of the Legislature to authorize a group of district courts to control a single trial court's independent discretion in setting court-appointed attorney fees under the guise of establishing "administrative rules." A trial court's decision to award a particular fee to a court-appointed attorney does not involve an administrative function. It is a "criminal law matter" controlled by Article 26.05, supra. Therefore, the Board of Judges had no authority under the Court Administration Act to establish a fee schedule pursuant to Rule VI(E) for payment of court-appointed attorney fees.

Having so found, we conclude that the respondents' reduction of relators' claims for court-appointed attorney fees could not

---

10. We do note that the Commissioners Court of Harris County has been given authority to contract with certain legal entities to provide counsel for indigent defendants in lieu of paying for court-appointed counsel. See Art. 26.041, V.A.C. C.P. (Supp.1987). Through that authority, the Commissioners Court can certainly control the *amount* of money paid for the defense of indigent defendants in criminal prosecutions. Cf. Art. 26.05, supra. However, in the instant case, the Commissioners Court did not contract with relators pursuant to Article 26.041, supra.

have been authorized by local rules of administration adopted by the Board of Judges. Because we find no other authorization for the county's actions, we must conclude that the County Auditor and the Commissioners Court failed to perform the ministerial act of reviewing relators' claims within their statutory authority.

Having found that relators properly seek to compel respondents to perform a *ministerial act,* we must now determine whether they have any other *adequate remedy at law.*

### B.

■■■ Relators acknowledge that a remedy at law, e.g., filing a suit in civil district court, may exist in the instant case. However, they argue that the mere existence of some remedy at law does not necessarily prevent mandamus from issuing. We agree.

A writ of mandamus is an extraordinary remedy that compels a respondent to perform some ministerial act. Often involved are sensitive questions concerning an elected official's authority to perform a particular duty. To assure that a relator will not prematurely apply for extraordinary relief via writ of mandamus, this Court, consistent with the Supreme Court, requires that a relator show that he has no other *adequate* remedy at law before mandamus will issue.

In some cases, a remedy at law may technically exist; however, it may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate or ineffective as to be deemed inadequate. See, e.g., *Houston & T.C. Ry. Co. v. City of Dallas,* 98 Tex. 396, 84 S.W. 648, 656 (1905) ("there is not a plain, adequate, certain, and speedy remedy"); *City of High-*

*land Park v. Dallas Ry. Co.,* 243 S.W. 674, 681 (Tex.Civ.App.—Dallas 1922, writ ref'd) (remedy must be "equally convenient, beneficial, and effective as the proceeding by mandamus").

Given the subjective nature of such terms as "plain" and "uncertain," "convenient" and "inconvenient," "effective" and "ineffective," this Court must examine the specific circumstances of each case and carefully exercise its discretion before deciding whether a particular remedy at law is adequate. See, e.g., *Dickens,* at 551–552 (discussing the adequacy of reviewing pretrial discovery orders through appeal). In addition, equitable principles are necessarily involved when we consider whether mandamus should issue. See *Callahan v. Giles,* 137 Tex. 571, 155 S.W.2d 793, 795 (1941).

■■■ Whether the construction of a criminal statute such as Article 26.05, supra, by civil courts in a civil lawsuit is an adequate remedy at law presents a question of first impression to this Court. Several courts of appeals have found, in cases similar to the instant case, that a civil suit is an *inadequate* remedy at law to compel a county to pay a claim for money. *Guerra v. Weatherly,* 291 S.W.2d 493, 496 (Tex. Civ.App.—Waco 1956, no writ); *Wichita County v. Griffin,* 284 S.W.2d 253, 256 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n.r.e.); *Chrestman v. Tompkins,* supra; *Ham v. Garvey,* 155 S.W.2d 976 (Tex.Civ. App.—San Antonio 1941, no writ); *Hood v. Cain,* 32 S.W.2d 485 (Tex.Civ.App.—El Paso 1930, writ refused).[11]

Of these cases, one court provided a persuasive discussion of its reasons for finding the remedy at law inadequate.[12] See *Chrestman v. Tompkins,* supra. In *Chrestman,* a Dallas attorney applied for a

---

**11.** Respondents cite two cases from the courts of appeals in support of their claim that a civil suit is an adequate remedy under the instant circumstances. See *Smith v. McCoy,* supra, at 461 ("remedy here is a suit against the county"); *Lovell v. Bynum,* 315 S.W.2d 20, 22 (Tex.Civ. App.—Austin 1958, writ ref'd n.r.e.) ("remedy was to bring suit against Houston County"). However, in both cases, the courts rejected the relators' applications for mandamus because there was no ministerial act to compel. Conse-

quently, the courts did not address the adequacy of the suggested remedy at law.

**12.** One commentator has criticized Texas courts for failing to explain how a particular remedy at law is inadequate before issuing mandamus. See Dix, *Appellate Review by Mandamus and Prohibition in Texas Criminal Litigation,* 17 Tex. Tech L.Rev. 75, 89–115 (1986).

writ of mandamus to compel the county auditor "to countersign a warrant for $500 to be paid him on the order of the board of education of the city for legal services rendered under employment by said board." *Id.*, at 258. After determining that the relator sought to compel the auditor to perform a ministerial act, the court addressed the adequate remedy at law requirement. We quote the court's analysis in its entirety:

As heretofore shown, there was no controversy over any matter except as to the legal authority of the board of education to incur the indebtedness and pay for same out of the general school fund of the city. Relator's fee had been earned, it was then due, the board of education was willing to pay, and for that purpose had authorized the issuance of the warrant. Relator was entitled to have his fee paid at once without being forced to pursue the circuitous route of a suit in court to establish the claim, with the expense and delay necessarily incident to such a course.

If the auditor, for the reason stated, is permitted to refuse approval of this claim, clothed as it is with indisputable evidence of validity and correctness, and thus compel institution of a suit for its establishment by judgment before meriting his approval, he could, if in an arbitrary mood, likewise withhold approval from every warrant issued by authority of the board of education for the payment of salaries of officers, teachers, and employees, to the utter demoralization of the school system of the city.

The only adequate, specific, appropriate remedy for the situation presented was the writ of mandamus compelling the auditor to do the only thing necessary to be done; that is, to approve the warrant for payment, no other [remedy] could afford relief as adequate.

In *International Water Co. v. City of El Paso*, 51 Tex.Civ.App. 321, 327, 112 S.W. 816, 819, responding to the contention that mandamus could not be resorted to because plaintiff had an adequate remedy at law, the court, quoting from High on Extraordinary Remedies, said:

"It is to be borne in mind, in the application of the principle under discussion, that the existing legal remedy relied upon as a bar to interference by mandamus must not only be an adequate remedy in the general sense of the term, but it must be specific and appropriate to the particular circumstances of the case; that is, it must be such a remedy as affords relief upon the very subject matter of the controversy, and if it is not adequate to afford the part aggrieved the particular right which the law accords him, mandamus will lie, notwithstanding the existence of such other remedy."

*Id.*, at 262.

Similar to the situation in *Chrestman*, only a single legal issue remains. The only issue that remains in the instant case is whether the County Auditor and Commissioners Court could lawfully delegate their authority to examine and approve the county's accounts to the Board of Judges. This is true because it is uncontroverted that Judge Denson ordered reasonable fees paid to relators under Article 26.05, supra.

Nonetheless, respondents have denied, and apparently intend to continue to deny, all claims from court-appointed attorneys for their fees solely on the basis of an unauthorized fee schedule originally established by the Board of Judges. That policy plainly contradicts the method of fee-setting established by the Legislature in Article 26.05, supra, which provides court-appointed attorneys with immediate compensation for their work as set by the various trial courts. Also, as in *Chrestman*, the respondents' unauthorized policy threatens to erode the confidence of court-appointed attorneys throughout Harris County, if not the entire state, by jeopardizing the very source of their income. If relators are forced "to pursue the circuitous route of a suit in court to establish [their] claim[s], with the expense and delay necessarily incident to such a course[,]" then the important function of court-appointed attorneys in our criminal justice system could be seriously compromised before relief arrives. See *Chrestman*, supra at 262.

The inadequacy of relators' remedies at law in the instant case is suggested by an additional consideration. Each of the remedies at law theoretically available to relators, e.g., suits for declaratory judgments or civil suits for payment of claims, would require relators to pursue their legal remedies in civil district courts. And, even though relators ultimately could appeal those civil judgments to a court of appeals, they would not be able to appeal from the court of appeals to this Court in that civil suit. Moreover, a court of appeals would have no case precedent from this Court directly relating to the issues raised by relators. Essentially, relators would be forced to seek relief in a criminal law matter before civil law forums, despite the fact that this Court is the final arbiter of criminal law matters. Considering all of the above factors, we find that the remedies at law herein enumerated could not provide relators the same swift, exact and sure relief that is available through mandamus; nor could they provide remedies that are *equally* as convenient, beneficial and effective as mandamus.

We conditionally grant relators' application for writ of mandamus. Unless respondents reconsider relators' claims for court-appointed attorney fees consistent with this opinion, writ will issue.

WHITE, J., concurs in result.

CLINTON, Judge, concurring.

Regarding the power of this Court to issue writs of mandamus in "criminal law matters," from but one of several definitions of "matter" found in a general law dictionary the opinion of the Court translates the term to mean "when *a criminal law* is the subject of the litigation." Majority opinion, p. 788.[1] I cannot subscribe to that understanding of "matters" in the constitutional and statutory term *"in* criminal law matters." Article V, § 5 and Article 4.04, § 1, V.A.C.C.P. And there is no need to resort to a compendium of decisions from other states when the correct construction may be drawn from our own sources.

Like all other similar remedies, the writ of mandamus is an extraordinary writ. 38 Tex.Jur.3d 40–41, § 7; former Tex.Cr.App. Rule 313; Tex.R.App.Pro. Rule 211 (a). When filed in a superior court, an application for the writ initiates an *"original proceeding,"* and the superior court exercises its *original jurisdiction* in determining whether to issue the writ. Tex.R.App.Pro. Rule 121(a). In common parlance of the legal profession such a proceeding, as well as others, is also known as a *"matter."*[2] Indeed, in our own rules we have collectively denominated them "Extraordinary Matters." Tex.R.App.Pro. Rule 211. So we have ample authority right here at home to support the proposition that the term contemplates original proceedings in this Court implicating the general criminal law, regardless of whether *"a* criminal law is the subject" of such extraordinary matters.[3]

---

1. Actually, the majority derives its formulation not from "matter" alone but from "Matter in controversy, or in dispute." Omitting cases cited from other jurisdictions, the entire definition is as follows:

   "Subject of litigation; matter on which action is brought and issue is joined and in relation to which, if issue be one of fact, testimony is taken. Rights which *plaintiffs* assert and seek to have protected and enforced."

   (All emphasis is mine throughout unless otherwise noted.)

2. As in, e.g., "jurisdiction of a cause, *matter,* or controversy," former Tex.R.Civ.Pro. Rule 365a, promulgated by the Supreme Court of Texas in 1960, now Tex.R.App.Pro. Rule 16; or "an extradition *matter*" and "a bail *matter, id.,* Rule 44(d), adopted and promulgated by this Court in December 1985 "to *govern* criminal cases and criminal law *matters* [Article V, § 5, and Article 4.04, C.C.P.]," and again with similar order simultaneously with the Supreme Court in April 1986. See also Order Adopting Texas Rules of Criminal Evidence dated December 18, 1985 "to govern criminal cases and criminal law *matters* [Article V, § 5, and Article 4.04. C.C.P.]." In those instances a "matter" is a "proceeding," not a law.

3. Soon after the Court was empowered to issue certain writs *"regarding* criminal matters," it decided that because the Supreme Court of Texas had previously issued writs of mandamus to order speedy trials under constitutional mandates, the Court has like authority "to issue extraordinary writs of mandamus to compel a speedy trial in a criminal case." *Thomas v.*

That construction of § 5 is in line with views expressed by Judge Odom in *Henson*, supra, and more strongly supports our rejecting the contention of Judge Dial in *Weiner*, supra.[4]

Accordingly, stoutly disagreeing with its interpretation, for reasons stated I conclude that in this criminal law matter this Court has plenary original jurisdiction, power and authority to determine whether to grant the extraordinary writ for which relators pray.

Furthermore, even the erroneous formulation out of a dictionary definition is flawed by vagueness and overbreadth. The interpretation is easily formulated in the instant proceeding because Article 26.-05, V.A.C.C.P., is directly implicated. However, in its vague terminology the translation is at once restrictive and overly broad, i.e., limited to "*a* criminal law," yet in a wide context of "the subject of the litigation."

The same dictionary cited in the majority opinion presently defines "litigation" as "a lawsuit" and "a suit at law:" "A contest in a court of law for the purpose of enforcing a right or seeking a remedy." Black's Law Dictionary (Fifth Edition) 841. The earlier edition specified, e.g., "civil actions." Black's Law Dictionary (Fourth Edition) 1082. Then as now, however, *Black's* tell us that "suit" is a generic term "seldom applied to a criminal prosecution." *Id.*, Fifth Edition, at 1286; Fourth Edition, at 1603.

Most such definitions are drawn from civil cases in other jurisdictions and, in some instances, Federal Rules of Civil Procedure. They are not all that helpful in determining what is "a criminal law matter" under our own Constitution and statutes; the interpretation of the majority here is fraught with much difficulty, and is surely to cause a great deal of confusion—more than once found in our appellate judicial system. See, e.g., *Bretz v. State*, 508 S.W.2d 97 (Tex.Cr.App.1974) (Concurring opinion by Roberts, J.)

With little imagination one may conjure up civil actions in which "a criminal law" is "the subject of the litigation," or "directly involve[d]" in it. Majority opinion, at p. 788. Take, for an example, the fertile field of civil actions for wrongful bodily injury or death in which the defense is justification under Chapter 9 of the Penal Code. Yet, because the majority would find that is a "criminal law matter" and the majority professes to protect the power of this Court from being "seriously eroded or eliminated altogether," majority opinion, at p. 789, arguably in "litigation" initiated here, this Court has jurisdiction, power and authority to issue a writ of mandamus against a trial judge in what is otherwise purely a civil action pending in trial court.

There is another problem in all this. In Texas a criminal prosecution is a criminal case—"a criminal action," as defined in Article 3.02, V.A.C.C.P., and elsewhere, *viz:*

"A criminal action is prosecuted in the name of the State of Texas against the

---

*Stevenson, Judge*, 561 S.W.2d 845 (Tex.Cr.App. 1978). Later, because "a bond forfeiture proceeding is 'criminal in nature'" the Court had jurisdiction to issue a writ of mandamus to compel a district judge to set aside a final order of forfeiture in a bond case. *State ex rel Vance v. Routt, Judge*, 571 S.W.2d 903, 906 (Tex.Cr. App.1978). See also and compare *Ex parte Paprskar*, 573 S.W.2d 525 (Tex.Cr.App.1978) and *State v. Henson*, 573 S.W.2d 548 (Tex.Cr.App. 1978) (Odom, J., dissenting, *id.*, at 550–551); however, Judge Odom may have been vindicated when both decisions were overruled "to the extent of any conflict" by this Court in *Weiner v. Dial*, 653 S.W.2d 786, 787, n. 1. (Tex.Cr.App. 1983).

Thus, as used in former Article V, § 5, "regarding" meant with respect to an underlying "matter" and the nature of that proceeding.

However, with the change of language to "*in* criminal law matters," the "matter" alluded to is an original proceeding in this Court and its nature in relation to criminal law.

4. That is, the original proceeding in *Weiner* is a "criminal law matter," not because there are statutory provisions for appointment by trial judge and compensation of counsel in certain instances, *id.*, at 787, but in that upon his claim for fees in representing his client *being denied* by the trial court, Weiner moved for and this Court granted leave to file his application for writ of mandamus to compel the judge to authorize payment of his fees, thereby initiating an original proceeding and generating the original jurisdiction, power and authority of this Court to determine application of those statutory provisions to the facts of the matter.

accused, and is conducted by some person acting under the authority of the State, in accordance with its laws."

See also, e.g. *Black's* (Fifth Edition) 27 and 336; Fourth Edition) 49 and 447, under Action and Criminal, respectively. Since the majority believes that "a criminal law [must be] the subject of the litigation," its formulation does not readily include an ancillary proceeding in "a criminal action" where "*a* criminal law" is *not* "directly involved."[5] Again, the problem lies in failure to accept the intended meaning of the term "in criminal law matters."

Finally, the majority addresses a contention of respondents and amicus curiae that the Court Administration Act authorizes their scheme for setting fees at issue here, and for reasons given finds that the Legislature did not intend to authorize the manner in which that apparatus was setup. With that I do not disagree, but based on my understanding that the claimed authority for what was done here lies in an order issued by Honorable Jon N. Hughes, in a capacity as "Administrative Judge of the District Judges Trying Criminal Cases," I turn briefly to examine that notion.

Chapter 5 of the Act deals with administration by county. At the outset it declares, "There is *a* local administrative judge in each county," and provides that in a county with two or more district or statutory county courts (as Harris County certainly is) "the judges of those courts shall elect *a* district judge as local administrative judge...." Section 5.001(a) and (b). Plainly that section authorizes but one local administrative judge in Harris County to perform the duties and functions listed in § 5.002.

When he signed and entered the order of June 4, 1986, as "Administrative Judge, District Judges Trying Criminal Cases," Judge Hughes did not purport to act as *the* local administrative judge in Harris County, and we judicially know that on June 4, 1986, he did not and another district judge did hold that office. Nowhere in the Act is there a provision expressly or implicitly authorizing the position held by Judge Hughes or his issuing such an order to the County Auditor. That it was adopted by "Board of District Judges Trying Criminal Cases" in meeting assembled will not provide that authority; the Act does not create any such "board" and even if § 5.003(c) may be interpreted broadly enough to admit creating it in a "rule of administration," no one contends and this record does not show any rule to that effect has been adopted by a majority vote of all "district and statutory county court judges [in Harris County]," as required by § 5.003(a).[6]

Except as indicated, then, I agree with much of what the majority has to say and to find and to conclude. However, because I find its interpretation of Article V, § 5, and Article 4.04(a) so contrary to the meaning of "in criminal law matters," I must join only its conditional grant of the application for writ of mandamus.

ONION, Presiding Judge, dissenting.

"While unconstitutional exercise of power by the executive and legislative

---

5. A criminal law is not the subject nor is one directly involved in, e.g., *Knowles v. Scofield*, 598 S.W.2d 854 (Tex.Cr.App.1980); at issue was whether the requirement in Article V, § 7, that a district court "shall conduct its proceedings at the county seat of the county in which the case is pending....," precluded trial of "a criminal action" in a structure relator alleged was not situated in the county seat. Similarly, when Judge Gordon Gray granted a defense motion invoking the doctrine of collateral estoppel and thereby reduced the charge in a criminal action from capital murder to murder, a legal doctrine—not a criminal law—was the subject and was directly involved. *Curry v. Gray*, Judge, 726 S.W.2d 125 (Tex.Cr.App.1987.)

6. On February 4, 1987 the Supreme Court of Texas entered an order approving Rules of Judicial Administration, promulgated pursuant to Section 2.004 of Article 200a, V.T.C.S. 50 Tex.Bar J. (April 1987) 388 ff. In counties where courts have "divisions based on the types of cases generally heard," Rule 9.a. permits judges of "each division" to chose one of them as "the administrative judge of that division." Rule 9.b. includes among other matters local rules may address "(5) County Auditors." Rule 10 mandates each division to adopt a single set of local rules which "shall govern all courts in the division."

One may anticipate that our decision in this extraordinary matter is not likely to settle for all time the underlying controversy.

branches of government is subject to judicial restraint, the only check upon our own exercise of power is our own sense of self restraint." Stone, J., *United States v. Butler*, 297 U.S. 1, 78, 56 S.Ct. 312 [324], 80 L.Ed. 477, 495, 102 A.L.R. 914 (1936).

The authority of the Court of Criminal Appeals to issue a writ of mandamus is limited. It may issue such writ only "in criminal law matters." Article V, § 5, Texas Constitution, as amended Nov. 4, 1980, effective Sept. 1, 1981. See also Article 4.04, V.A.C.C.P. The relators seek to invoke the original subject matter jurisdiction of this Court praying for a writ of mandamus in order to collect the balance of fees they claim are due them by Harris County. The color of money is the name of the game, the subject of the litigation. It is a civil law matter. The majority today acts beyond this Court's jurisdiction.

It is true the fees were ordered paid under Article 26.05, V.A.C.C.P., but like many lawsuits, the majority has had to construe and interpret a number of civil statutes in order to arrive at its conclusion that the respondents must "pay up" in order to avoid the issuance of a writ of mandamus. Passing the chicken once through boiling water does not chicken soup make. Neither does the involvement of one criminal law convert every lawsuit into a criminal law matter so that this Court acquires jurisdiction to issue writs of mandamus. Even the concurring opinion (Clinton, J.) kindly refers to the majority's interpretation of said Article V, § 5, and Article 4.04, supra, as "hopelessly flawed."

"Laws are made for men of ordinary understanding and should therefore, be construed by the ordinary rules of common sense. Their meaning is not to be sought in metaphysical subtleties, which may make anything mean everything or nothing at pleasure." Thomas Jefferson, Letter to William Johnson, June 12, 1823.

From the effective date of the 1891 amendment to Article V, § 5 of the Texas Constitution (when the Court of Criminal Appeals was originally created) until January 1, 1978, the effective date of the 1977 amendment to the same constitutional provision (Acts 1977, 65th Leg., p. 3359, 5 J.R. 18), the Court of Criminal Appeals could only issue writs of mandamus to enforce its appellate jurisdiction. It had no power to issue writs of mandamus generally. *Millikin v. Jeffrey*, 117 Tex. 134, 299 S.W. 393 (1927); *State ex rel. Smith v. Blackwell*, 500 S.W.2d 97 (Tex.Cr.App.1973); *Ex parte Giles*, 502 S.W.2d 774 (Tex.Cr.App.1974); *Walker v. State*, 537 S.W.2d 36 (Tex.Cr. App.1976).[1]

During such times the Court of Criminal Appeals did not even have the authority to issue a writ of mandamus to compel a speedy trial in a criminal case. Its appellate jurisdiction was not involved. Only the Supreme Court of Texas under its general mandamus authority could issue such a writ. *Fariss v. Tipps*, 463 S.W.2d 176 (Tex.1971); *Pope v. Ferguson*, 445 S.W.2d 950 (Tex.1969), cert. den. 397 U.S. 997, 90 S.Ct. 1138, 25 L.Ed.2d 405 (1970).

When Senate Joint Resolution 18 was pending in the 65th Legislature (1977), this writer and other members of the Court of Criminal Appeals appeared before legislative committees of the House and Senate to explain its provisions, and to point out that under existing constitutional provisions this Court, a court of last resort for criminal law matters, did not even have the authority to issue writs of mandamus to compel speedy trials in criminal cases, that such business had become big business in the Supreme Court, and changes were needed. See *Thomas v. Stevenson*, 561 S.W.2d 845, 847 (Tex.Cr.App.1978) (Concurring Opinion, Onion, P.J.); Tape Recordings of Hearings, House Committee on Constitutional Amendments, April 6, 1977, on file with the Texas House of Representatives; Dix, *Appellate Review by Mandamus and Prohi-*

---

**1.** The language contained in Article V, § 5, supra, from 1891 until the 1977 amendment provided in pertinent part:

"The Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, *and under such regulations as may be prescribed by law, issue such writs as may be necessary to enforce its jurisdiction....*" (Emphasis supplied.)

*bition in Texas Criminal Litigation,* 17 Tex.Tech L.Rev. 75, 84 (1986).

S.J.B. 18 proposed an amendment to Article V, § 5 of the Texas Constitution which was adopted by the voters on November 8, 1977 and became effective January 1, 1978. The pertinent part of the 1977 amendment provided:

"Subject to such regulations as may be prescribed by law, *regarding criminal law matters,* the *Court of Criminal Appeals* and the Judges thereof *shall have the power to issue the writs* of habeas corpus, *mandamus,* procedendo, prohibition, certiorari, and such other writs as may be necessary to protect its jurisdiction or enforce its judgments...." (Emphasis supplied.)

As pointed out in the concurring opinion in *Thomas v. Stevenson,* supra, at p. 848, there were limitations imposed on the newly granted authority.

"One important limitation, however, is that the court's authority to issue such above described writs is limited to 'criminal matters.' *The limitation was* the subject of a committee substitute to said Senate Joint Resolution by Senator Bill Neier of Euless, sponsor of the joint resolution, early in the legislative process, *to counter claims that without such limitation the Court of Criminal Appeals might use its newly granted writ powers in civil law matters.*" (Emphasis supplied.)

With today's opinion it can be said that the fears expressed in 1977 were well founded, and the drafters had a real basis for inserting a limitation into the authority being newly granted to the Court of Criminal Appeals.

Despite slight changes in the language,[2] the limitation was retained and brought forward in the 1980 amendment to said Article V, § 5. The pertinent part of the amendment reads:

2. The rewording of the constitutional amendment was not undertaken to change the nature of the limitation upon this Court's authority to issue writs of mandamus, but to address the concern of many lawyers as expressed in this

"Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus and, *in criminal law* matters, the *writs of mandamus,* procedendo, prohibition and certiorari...."

As earlier noted, relators now seek the issuance of a writ of mandamus from this Court of last resort in criminal matters to compel payment of the balance of the fees awarded them as court-appointed counsel by a district judge ·under Article 26.05, V.A.C.C.P. One relator (Smith) contends he was paid $1,700.00 but the original award was $2,500.00. He seeks the balance of $800.00. Two other relators seek balances of $100.00 each and the remaining relator claims a balance of $75.00. The respondents contend in their answers that payment of the lesser fees was lawful and proper in view of the fee-setting limitations placed on district judges by Rule VI(E) promulgated pursuant to the Court Administration Act, Article 200a–1, V.A.C.S., by the "Board of District Judges Trying Criminal Cases [in Harris County]" and various civil statutes affecting the duties of the County Auditor and the Commissioners Court. Clearly a legal dispute between the parties as to the proper fees to be paid exists, a squabble about money.

Even a first-year law student would have no difficulty in identifying this monetary dispute a civil law matter. And he would have no difficulty in understanding that in the trial of a criminal case the application and interpretation of civil statutes are often involved and vice versa.

In my opinion the instant proceeding is not a "criminal law matter" as contemplated by Article V, § 5 of the State Constitution and Article 4.04, V.A.C.C.P., and I would hold that this Court is without jurisdiction to entertain relators' application for writ of mandamus. This has been evident from the very beginning.

writer's concurring opinion in Thomas v. Stevenson, supra, that the wording of the 1977 amendment may have clouded the previous unlimited authority of this Court to issue the writ of habeas corpus.

Even if it can be argued that mandamus is the proper remedy, it has been said that mandamus must be pursued in the lower courts unless urgent necessity calls for the exercise of the original jurisdiction of the court of last resort. *Love v. Wilcox,* 119 Tex. 256, 28 S.W.2d 515 (Tex.1930).

Only recently in *Dickens v. Court of Appeals for Second Supreme Judicial District,* 727 S.W.2d 542 (Tex.Cr.App.1987), this Court noted the mandamus jurisdiction of the Courts of Appeals. V.T.C.A., Government Code, § 22.221(b) (formerly Article 1824, V.A.C.S.). See also *State v. Westergren,* 707 S.W.2d 260 (Tex.App.–Corpus Christi 1986) (holding Courts of Appeals are vested with jurisdiction to issue writs of mandamus in both civil and criminal matters); *Thi Van Le v. Perkins,* 700 S.W.2d 768 (Tex.App.–Austin 1985); *Gibson v. Marsh,* 710 S.W.2d 107 (Tex.App.–El Paso 1986) (mandamus action for fees for appointed counsel in a criminal case interpreting Article 26.05, V.A.C.C.P.).

Further and most importantly, Article V, § 8 of the Texas Constitution provides that the district court and the judges thereof "shall have *power to issue writs of* habeas corpus, *mandamus,* injunction and certiorari, and *all writs necessary to enforce its jurisdiction* ... The District Court shall have appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law...." (Emphasis supplied.) See *Anderson v. Ashe,* 99 Tex. 447, 90 S.W. 872 (1906) (district court held to have jurisdiction of a mandamus proceeding to compel a county auditor to sign a warrant); *Denman v. Coffee,* 42 Tex.Civ.App. 78, 91 S.W. 800 (1905); *Alice National Bank v. Edwards,* 383 S.W.2d 482 (Tex.Civ.App. 1964) ref., n.r.e.

The general mandamus authority of the district court covers both civil and criminal law matters. The district court (248th District) which issued the orders for the payment of the fees is a constitutional district court with jurisdiction over both civil and criminal cases.

Under current and past constitutional provisions the Court of Criminal Appeals has had general and unlimited jurisdiction to issue original writs of habeas corpus. Article V, § 5, Tex.Const.; *State ex rel. Wilson v. Briggs,* 171 Tex.Cr.R. 479, 351 S.W.2d 892 (1961); *Ex parte Morris,* 171 Tex.Cr.R. 499, 352 S.W.2d 125 (1961). However, it has long been the policy of the Court not to entertain jurisdiction to grant original writs of habeas corpus except in extraordinary cases, 38 Tex.Jur.3rd, Extraordinary Writs, § 62, 121, and cases there cited. See also *Ex parte Krupps,* 712 S.W.2d 144 (Tex.Cr.App.1986) (Concurring Opinion). And it has been said that the Court of Criminal Appeals will not issue original writs where other courts have jurisdiction to do so. See, e.g., *Ex parte Phelper,* 433 S.W.2d 897 (Tex.Cr.App.1968); *Ex parte Crosley,* 548 S.W.2d 409 (Tex.Cr. App.1977); 38 Tex.Jur.3rd, Extraordinary Writs, § 62, pp. 125–126.

There is no reason why this policy should not be continued and also applied where the extraordinary writ of mandamus is involved. If mandamus is a proper remedy, then why should not the relators seek that remedy in the very district court whose orders they seek to enforce? Thus even if it could be validly argued that this Court has jurisdiction I would deny the mandamus application since such action would be within this Court's sound discretion and because of Court policy, and because of the lack of urgent necessity to involve a court of last resort for 254 counties as a clearing house for all local monetary disputes.

There are, of course, other reasons why the writ of mandamus should not issue in this instant case. "The modern writ of mandamus is an order issued *by a court of competent jurisdiction* requiring some inferior court, official, corporation, or board to perform a duty compelled by law." 38 Tex.Jur.3rd, Extraordinary Writs, § 114, p. 238. (Emphasis supplied.) Mandamus is an extraordinary remedy, and its issuance rests largely in the court's discretion. It has been described as a summary, harsh and drastic remedy. *Fenner v. Brockmoller,* 404 S.W.2d 369 (Tex.Civ.App.–El Paso 1966).

To obtain relief by writ of mandamus a relator must establish (1) that the act he seeks to compel is ministerial, rather than discretionary in nature, and (2) no other adequate remedy at law is available. *State ex rel. Vance v. Routt,* 571 S.W.2d 903 (Tex.Cr.App.1978). The relator must make a clear showing that under certain facts, the law is subject to but one interpretation, and he then must show that undisputed facts exist which entitled him unequivocally to a right flowing from that single interpretation. *Knowles v. Scofield,* 598 S.W.2d 854 (Tex.Cr.App.1980).[3] Mandamus lies only where there are no undisputed facts and the duty of the public official to act is clear, *Bigham v. Sutton,* 565 S.W.2d 561 (Tex.Civ.App.–Austin 1978). It will not issue to enforce a duty that is any degree debatable. *In re Corrugated Container Antitrust Litigation,* 614 F.2d 958 (5th Cir.1980), cert.den.sub.nom. *Mead Corp. v. Adams Extract Co.,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980); *State ex rel. Wade v. Mays,* 689 S.W.2d 893, 898 (Tex. Cr.App.1985). "It has been said that mandamus is but the 'means' or 'execution' to enforce the judgment in favor of those to whom the writ has been awarded, that *its function is to execute, not to adjudicate,* and that mandamus does not function to establish as well as enforce, a claim of uncertain merit." 38 Tex.Jur.3rd, Extraordinary Writs, § 115, pp. 240–241. (Emphasis supplied.) See also *Mitchell v. Ramfield,* 523 S.W.2d 456 (Tex.Civ.App.–Austin 1975); *Smith v. McCoy,* 533 S.W.2d 457 (Tex.Civ.App.1976) writ dism'd w.o.j.; *Bigham v. Sutton,* supra.

Relators have filed sworn pleadings setting forth their contentions with exhibits and a brief. The respondents have answered in response to this Court's order. This Court does not take testimony. *Ex parte Rodriguez,* 169 Tex.Crim.R. 367, 334 S.W.2d 294 (Tex.Cr.App.1960). Thus the decision before this Court is being decided without testimony. "In mandamus actions greater certainty of the pleadings and the facts to be established by mode appropriate in appellate court [is] required.... " *Kopeski v. Martin,* 629 S.W.2d 743, 745 (Tex.Cr. App.1982). There is greater strictness in the pleadings, and when the mandamus application is made to an appellate court which has limited fact-finding abilities, the writ must not depend on the determination of a doubtful question of fact. *Kopeski v. Martin,* supra, at p. 745.

The record before this Court indicates an ongoing local controversy about the possible excessiveness and unreasonableness of fees ordered paid appointed counsel in criminal cases by some of the district judges in Harris County. This has apparently led to the action taken by the "Board of District Judges Trying Criminal Cases" acting under Article 200a–1, V.A.C.S., and as described in the majority opinion. The respondent County Auditor, appointed by all the district judges in Harris County, has found himself caught between conflicting orders and with certain statutory duties to perform. See, e.g., Article 1660, V.A.C.S. The other respondents, the members of the Commissioners' Court, have paid the only bills approved by the County Auditor and presented to them. Without such approval they would not be authorized to order payment of other accounts and bills. See Article 1660, supra.

The facts available from this record need not be rehashed here. Considering all of the allegations and the duties of the respondents, their remaining right to legally test the reasonableness of the unpaid balances claimed due to the relators, questions of law and fact are provoked which clearly indicate that more than a ministerial duty on the part of the respondents is here involved. See and cf. *Lovell v. Bynum,* 315 S.W.2d 20, 24 (Tex.Civ.App.–Austin

---

**3.** In *Texas Department of Corrections v. Dalehite,* 623 S.W.2d 420, 424 (Tex.Cr.App.1981), it was stated:

"An act is said to be [subject to extraordinary relief] where the law clearly spells out the duty to be performed by an official and does so with such certainty that nothing is left to the exercise of discretion or judgment. *Forbes v. City of Houston,* 356 S.W.2d 709 (Tex.Cr.App.1962)."

1958).[4] The mandamus action, if proper, could also be denied on this ground alone.

The majority admits there are other remedies available to the relators but they are not *"equally* as convenient, beneficial and effective as mandamus" providing "the same swift, exact and sure relief." No other remedy need apply. Nothing is as swift, convenient and effective as a writ of mandamus from the Court of Criminal Appeals to collect money.

In arriving at its conclusion the majority fears the construction of Article 26.05, supra, by a civil court and expresses its underlying concern that any civil judgment would be appealed to a Court of Appeals and there would be no "appeal from the court of appeals to this Court in that civil suit," and the Court of Appeals would have no precedent from this Court to guide it in passing on this criminal law. Considering that the majority just construed a civil statute (Article 200a–1, V.A.C.S.) and held it inapplicable without any precedent or guidance from the Supreme Court of Texas as the final arbiter of civil law matters, its reasoning would be laughable if it was not so tragic.

Exceeding the mandamus jurisdiction of this Court, the majority has set itself up as a Super Board of Judges to pass on all local monetary disputes over fees paid court-appointed counsel and all other civil matters involving a criminal law.

"I know of only one authority which might justify the suggested method of construction:

" 'When I used a word' Humpty Dumpty said in rather a scornful tone, 'it means just what I choose it to mean, neither more nor less.' 'The question is,' said Alice, 'whether you can make words mean so many different things.' 'The question is' said Humpty Dumpty, 'which is to be master—that's all.' " Lord Atkin, Liversidge v. Anderson [1942] A C

206, 245 Quoting Lewis Carroll, *Through the Looking Glass,* Chapter 6.

The majority should keep in mind the words of Justice Jackson in *Brown v. Allen,* 344 U.S. 443, 540, 73 S.Ct. 397, 427, 97 L.Ed. 469, 533 (1953):

"We are not final because we are infallible, but we are infallible only because we are final."

I dissent to the action of the majority with the greatest concern over the lack of judicial discipline and restraint.[5]

---

**4.** It is observed that the majority has not to construe and interpret Article 200–1, V.A.C.S., a matter of first impression in order to adjudicate the issue before the Court in this "mandamus" action.

**5.** See *Ex parte Michael Henslee,* 715 S.W.2d 361 (Tex.Cr.App.1986). See and cf. *Ex parte Krupps,* 712 S.W.2d 144, 151 (Tex.Cr.App.1986) (Concurring Opinion, Onion, P.J.).