ACCEPTED
06-14-00086-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/29/2014 3:39:15 PM
DEBBIE AUTREY
CLERK

No. 06-14-00086-CV

In The

# Sixth Court of Appeals

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/30/2014 4:20:00 PM
DEBBIE AUTREY
Clerk

Texarkana, Texas

**Faye Comte & Laura Severt,**

Appellants,

v.

**Smith County Commissioners Court,**

**Joel Baker, Cary Nix, Jeff Warr,**

**Joann Hampton & Terry Phillips**

Appellees.

On Appeal from the 241st District Court
of Smith County, Texas
Trial Cause No. 13-2492-C

## BRIEF FOR APPELLANTS

**Brandon Beck**
State Bar No. 24082671
Starr Schoenbrun Comte
McGuire PLLC
110 N. College Ave., Suite 1700
Tyler, TX 75702
*Appellate Counsel*

**Oral Argument Requested**

# IDENTITY OF PARTIES AND COUNSEL

**Appellants / Relators**

      Faye Comte
      Laura Severt

**Counsel for Appellants / Relators**

      Brandon Beck
      Starr Schoenbrun Comte McGuire, PLLC
      110 N. College Ave., Suite 1700
      Tyler, TX 75702

**Appellees / Respondents**

      Smith County Commissioners Court
      Joel Baker
      Cary Nix
      Jeff Warr
      Joann Hampton
      Terry Phillips

**Counsel for Appellees / Respondents**

      Robert Davis
      Flowers Davis, PLLC
      1021 ESE Loop 323, Suite 200
      Tyler, Texas 75701

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................i

TABLE OF CONTENTS ....................................................................................ii

INDEX OF AUTHORITIES ..............................................................................iv

STATEMENT OF THE CASE ...........................................................................vi

STATEMENT REGARDING ORAL ARGUMENT ...........................................viii

ISSUE PRESENTED.........................................................................................ix

STATEMENT OF FACTS..................................................................................1

SUMMARY OF THE ARGUMENT ..................................................................3

STANDARD OF REVIEW................................................................................5

ARGUMENT....................................................................................................6

I.      This court should reverse and instruct the district court to issue a writ of mandamus because the Smith County Commissioners Court refuses to perform a ministerial act and the Appellants have no other adequate remedy at law ......................................................................6

          A.    The Smith County Commissioners Court refused to perform a ministerial act when it decided to withhold payment from court-appointed attorneys ....................................................................6

                1.    A district court judge is required by law to appoint attorneys to represent the interests of children and indigent adults in DFPS termination cases ..............................................8

                2.    It is within the inherent power of a district court to decide whom to appoint ................................................................9

3.  All statutory prerequisites to payment were met ..............................11

4.  The Legislature requires the County Commissioners Court to direct payment to court-appointed attorneys from the funds of the county ..................................................................................14

B.  The Appellants have no other adequate remedy at law............................15

II.  The two highest Texas courts have explored these issues under similar circumstances and held that mandamus must issue..........................................17

A.  In *Smith v. Flack*, a case directly on point, the Texas Court of Criminal Appeals issued a writ of mandamus compelling a Commissioners Court to pay court-appointed attorneys..........................17

B.  The Texas Supreme Court's reasoning in *Vondy v. Commissioners Court of Uvalde County* strongly urges a holding in favor of the Appellants.................................................................................................20

PRAYER..................................................................................................................23

CERTIFICATE OF COMPLIANCE....................................................................24

CERTIFICATE OF SERVICE.............................................................................24

APPENDIX 1: A Flowchart of the Statutory Framework ........................... Tab 1

# INDEX OF AUTHORITIES

*Page(s)*

**CASES**

*Entergy Gulf States, Inc. v. Summers,*
   282 S.W.3d 433 (Tex. 2009) ...............................................................................7

*Highland Park v. Dallas R. Co.,*
   243 S.W. 674 (Tex. App. 1922) .........................................................................16

*Mattox v. Grimes Cnty. Comm'rs Court,*
   (Tex. App.—Houston [14th Dist.] 2010, pet. denied) .......................................5

*Mays v. Fifth Court of Appeals,*
   755 S.W.2d 78 (Tex. 1988) ...........................................................................6, 10

*Smith v. Flack,*
   728 S.W.2d 784 (Tex. Crim. App. 1987) ...................................................passim

*Vondy v. Comm'rs Court of Uvalde Cnty.,*
   620 S.W.2d 104 (Tex. 1981) ......................................................................passim

*Withers v. Comm'rs Court,*
   75 S.W.3d 528 (Tex. App.—San Antonio 2002, no pet.) ...................................5

**TEXAS CONSTITUTION**

Tex. Const. art. V, § 8 .........................................................................................10

Tex. Const. art. XVI, § 61 (amended 1972) .........................................................21

**STATUTORY PROVISIONS**

Tex. Crim. Proc. Ann. art. 26.05 (Vernon Supp. 2009) ..................................12, 13

Tex. Fam. Code Ann. § 51.10 (Vernon 2014) ......................................................12

Tex. Fam. Code Ann. § 107.012 (Vernon 2014) .................................................8, 9

# INDEX OF AUTHORITIES (cont'd)

*Page(s)*

Tex. Fam. Code Ann. § 107.013 (Vernon 2014) ......................................................9

Tex. Fam. Code Ann. § 107.015 (Vernon 2014) ............................................... passim

Tex. Gov't Code Ann. § 311.011 (Vernon 2013) ....................................................7

Tex. Gov't Code Ann. § 311.016 (Vernon 2013) .................................................7, 15

Tex. Loc. Gov't Code Ann. § 113.064 (Vernon 2008) ...........................................13

Tex. Loc. Gov't Code Ann. § 115.021 (Vernon 2008) ......................................15, 20

Vernon's Ann. Civ. Stat. Ann. art. 2351 (Supp. 1987)......................................18, 20

## OTHER AUTHORITIES

Marialyn Barnard et al., *Is my Case Mandamusable?: A Guide to the Current State of Mandamus Law*, 45 St. Mary's L.J. 143 (2014)...........................17

# STATEMENT OF THE CASE

On September 16, 2013, five court-appointed family law attorneys filed suit against the Smith County Commissioners Court and its members in the 241st Judicial District Court of Smith County, Texas. (C.R. at 1-28.) The attorneys sought mandamus relief, asking the court to order the County Commissioners to tender payment, in accordance with the Texas Family Code and Texas Local Government Code, for work that the attorneys had performed pursuant to appointment in Texas Department of Family and Protective Services (DFPS) termination cases. (C.R. at 1-28.) On October 14, 2013, the County Commissioners responded by filing a Plea to the Jurisdiction. (C.R. at 40-49.)

On November 14, 2013, the Honorable Jack Skeen, who is the presiding judge over the 241st Judicial District Court, recused himself *sua sponte*. (C.R. at 63.) On November 18, 2013, the Honorable Linda Thomas was appointed to hear the case. (C.R. at 64.)

Judge Thomas heard oral argument on June 6, 2014. (R.R. at 1-41.) On August 25, 2014, Judge Thomas signed a final judgment denying the Petition for Writ of Mandamus. (C.R. at 75.) Judge Thomas did not issue an opinion and never ruled on the Plea to the Jurisdiction. Two of the court-appointed attorneys now

appeal the decision to deny their Petition for Writ of Mandamus, having filed their

notice of appeal on October 2, 2014. (C.R. at 76-78.)

## STATEMENT REGARDING ORAL ARGUMENT

Due to the straightforward nature of this case and its near-identical relationship to *Smith v. Flack*, 728 S.W.2d 784 (Tex. Crim. App. 1987), the Appellants believe the facts and legal arguments are adequately presented in the briefs and record and the dispositive issues have been authoritatively decided. However, if this Court were to believe that additional guidance would assist its disposition, the Appellants request oral argument.

# ISSUE PRESENTED

Can a County Commissioners Court refuse to tender payment for services performed by court-appointed attorneys when:

(1) the appointments were required by Texas law;
(2) it is within a district court's inherent power to choose whom to appoint;
(3) the County Auditor has examined and approved the district court's invoices for payment; and
(4) Texas law expressly requires that the County Commissioners Court direct payment?

In other words, can a County Commissioners Court refuse to perform a purely ministerial act?

The 321st Judicial District Court of Smith County, Texas ("the 321st District Court") maintains a high-volume docket that consists primarily of family law cases. The court has nine contract attorneys who receive a monthly salary for representing children and indigent adults in Texas Department of Family and Protective Services (DFPS) termination cases. (*See* C.R. at 19.) If the contract attorneys were overloaded with cases or conflicted-out, the judge would appoint a non-contract attorney from the broader legal community for a particular case, who would be paid on an hourly (rather than salaried) basis. (*See* C.R. at 24-25, 27-28; R.R. at 4.) The Appellants, Faye Comte and Laura Severt, are two such attorneys.

Between October 29, 2012 and May 23, 2013, the 321st District Court appointed Ms. Comte and Ms. Severt to serve as an attorneys ad litem or guardians ad litem in multiple cases. (C.R. at 21.) All of these appointments were for the representation of children in DFPS termination cases. (C.R. at 21.) On June 18, 2013, the Smith County Commissioners Court issued an order, signed by County Judge Joel Baker, stating, "After July 18, 2013, the Smith County Commissioners Court will generally not approve any additional funding for non-contract attorney fees in civil family matters arising from the 321st Judicial District Court for fiscal year 2013." (C.R. at 17-19.) The order also advised the court to "take reasonable

steps" to transfer caseloads from non-contract attorneys to the contract attorneys. (C.R. at 19.)

Many cases were transferred; however, Ms. Comte and Ms. Severt reached the conclusion that it would unethical—pursuant to the Texas Rules of Professional Conduct—to terminate or transfer representation in twenty-three cases. (C.R. at 4; *see also* C.R. at 24-25.) These decisions were made after consulting with the Chief Disciplinary Counsel's Office of the State Bar of Texas. (C.R. at 4.) As such, Ms. Comte and Ms. Severt continued to represent some of their appointment clients. Once the legal services were rendered, they submitted invoices to the district court, which sent the invoices to the Smith County Auditor. (C.R. at 23, 26.) The Auditor then "examined and approved" the invoices and sent them by letter to Joel Baker and the County Commissioners "for payment." (C.R. at 23, 26.) The County Commissioners refused to tender payment, which left Ms. Comte, Ms. Severt, and three other appointed attorneys no choice but to seek mandamus relief. (C.R. at 1-28.) Their Petition for Writ of Mandamus was heard on June 6, 2014, and denied on August 25, 2014, without opinion. (R.R. at 1-41; C.R. at 75.) Ms. Comte and Ms. Severt now appeal the ruling of the district court.

## SUMMARY OF THE ARGUMENT

This case is about a County Commissioners Court depriving good attorneys of reasonable pay and jeopardizing the representation of children and indigent adults in Smith County by refusing to perform a purely ministerial act. Secondarily, at stake in this case is a district court's inherent power to manage its own affairs, which includes ad hoc decisions to appoint attorneys when required by Texas law.

*The statutory framework.* The Texas Family Code requires a district judge to appoint attorneys to represent children and indigent adults in DFPS termination cases. After the attorneys complete their work, the Code provides that they are to submit an invoice to the district court, which then sends the invoice to the County Auditor who examines and approves it for payment. Once approved, under both the Texas Family Code and Texas Local Government Code, the County Commissioners Court *shall* direct payment to the court-appointed attorneys from the funds of the county. Here, all of these events occurred in strict accordance with the relevant statutes except one: the Smith County Commissioners Court refused to pay the court-appointed attorneys, the Appellants in this case.

*The mandamus standard.* A district court must issue a writ of mandamus to compel a County Commissioners Court to perform an act if: (1) the act is ministerial; and (2) there is no other adequate remedy at law. First, the statutory

3

language chosen by the Legislature in this case does not afford the County Commissioners discretion; therefore, their act of directing payment is purely ministerial. Second, although the Appellants may technically have other remedies, the remedies are not *adequate*, as a matter of law, because they are more uncertain, burdensome, and tedious than mandamus relief.

*Legal precedent*. Both high courts in Texas—the Texas Supreme Court and the Texas Court of Criminal Appeals—have issued opinions that definitively resolve the issues in this case. In *Smith v. Flack*, the Texas Court of Criminal Appeals held that a County Commissioners Court cannot withhold payment from court-appointed criminal defense attorneys. In *Vondy v. Commissioners Court of Uvalde County*, the Texas Supreme Court held that a County Commissioners Court must direct payment when a statute affords no discretion, even when the Commissioners act under the guise of budgetary concern.

*The relief sought*. This Court should reverse and remand, with instructions that the district court: (1) calculate what the Appellants are owed, in accordance with the invoices submitted to the County Auditor by the 321st District Court; and (2) issue a writ of mandamus compelling the Smith County Commissioners Court and its members to direct payment to the Appellants for the owed amount.

## STANDARD OF REVIEW

The Appellants seek a writ of mandamus to compel public officials to perform a ministerial act. Whether an act is ministerial depends upon whether it is mandatory or discretionary. *Mattox v. Grimes County Comm'rs Court*, 305 S.W.3d 375, 380 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Such an inquiry, in this case, involves matters of statutory construction, which are questions of law reviewed de novo. *Withers v. Comm'rs Court*, 75 S.W.3d 528, 529 (Tex. App.—San Antonio 2002, no pet.). Therefore the trial court's decision is subject to de novo review.

**I.    This court should reverse and instruct the district court to issue a writ of mandamus because the Smith County Commissioners Court refuses to perform a ministerial act and the Appellants have no other adequate remedy at law.**

A writ of mandamus is one of the oldest forms of judicial relief and the appropriate means of redress when an official refuses to perform a ministerial act and there is no other adequate remedy at law. *Smith v. Flack*, 728 S.W.2d 784, 789 (Tex. Crim. App. 1987). Such is the case here, where the Smith County Commissioners Court has refused to direct payment to court-appointed attorneys for their work representing children and indigent adults. This refusal not only undermines the future representation of those in need but also needlessly interferes with the inherent power of the district court to manage its own affairs.

**A.    The Smith County Commissioners Court refused to perform a ministerial act when it decided to withhold payment from court-appointed attorneys.**

Texas courts have long held that mandamus is the proper remedy to compel an official to perform an act that is "ministerial." *Mays v. Fifth Court of Appeals*, 755 S.W.2d 78, 79 (Tex. 1988); *Smith v. Flack*, 728 S.W.2d 784, 789 (Tex. Crim. App. 1987); *Wortham v. Walker*, 133 Tex. 255, 277 (Tex. 1939). An act is ministerial if it constitutes a mandatory duty required by law. *Smith*, 728 S.W.2d at 789. To state

differently, an act is ministerial if the Legislature affords the actor no discretion.[1] *Id.* In order to determine whether the Legislature intends a statute to afford discretion, courts must focus on the language of the statute itself. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *see* Tex. Gov't Code Ann. § 311.011 (Vernon 2013). As a general rule, pursuant to the Texas Code Construction Act, statutes that contain "shall" reflect a ministerial act, whereas statutes that contain "may" are discretionary. Tex. Gov't Code Ann. § 311.016(1)-(2) (Vernon 2013).

Before analyzing the specific statutes that require the Commissioners Court to direct payment to the Appellants[2], it will be helpful to get a broad sense of the statutory framework at play. A series of connected statutory provisions governs the process from an attorney's appointment to ultimate compensation for her services. (*See* Appendix 1.) The events within this process are as follows: (1) the attorney is appointed; (2) the attorney submits an invoice to the district judge; (3) the judge approves and submits the invoice to the County Auditor; (4) the County Auditor approves and submits the invoice to the County Commissioners Court; and (5) the

---

[1] As an aside, in civil cases, mandamus can issue even when the actor has some discretion if he abuses his discretion. *Vondy v. Comm'rs Court of Uvalde Cnty.*, 620 S.W.2d 104, 109 (Tex. 1981) ("Even in matters involving some degree of discretion, the commissioners court may not act arbitrarily."). Here, however, the County Commissioners had no discretion to withhold payment.

[2] *See* discussion *infra* Part I.A.4.

7

County Commissioners Court directs payment to the attorney. Here, each of these events occurred except the last. Moreover, each of these events is required by statute, *especially* the last. Tex. Loc. Gov't Code Ann. § 115.021 (Vernon 2008); Tex. Fam. Code Ann. § 107.015(c) (Vernon 2014).

1. **A district court judge is required by law to appoint attorneys to represent the interests of children and indigent adults in DFPS termination cases.**

The Texas Legislature, in its wisdom, has determined that a district court must appoint counsel to represent children and indigent adults who are involved in Texas Department of Family and Protective Services (DFPS) termination cases. Regarding representation of children, the Texas Family Code provides:

> MANDATORY APPOINTMENT OF ATTORNEY AD LITEM FOR CHILD. In a suit filed by a governmental entity requesting termination of the parent-child relationship or to be named conservator of a child, the court shall appoint an attorney ad litem to represent the interests of the child immediately after the filing, but before the full adversary hearing, to ensure adequate representation of the child.

Tex. Fam. Code Ann. § 107.012. Similarly, regarding indigent adults, the Texas Family Code provides:

> MANDATORY APPOINTMENT OF ATTORNEY AD LITEM FOR PARENT.

(a) In a suit filed by a governmental entity under Subtitle E in which termination of the parent-child relationship or the appointment of a conservator for a child is requested, the court shall appoint an attorney ad litem to represent the interests of:

(1) an indigent parent of the child who responds in opposition to the termination or appointment . . . .

Tex. Fam. Code Ann. § 107.013 (Vernon 2014).

The Texas Family Code does not distinguish between contract or non-contract attorneys; instead, the Code only requires the appointment of an attorney who will "represent the interests of" the child or indigent parent. Tex. Fam. Code Ann. §§ 107.012-13. Here, the district judge did her job in strict accordance with the will of the Legislature. Texas law required her to appoint an attorney and she did; likewise, the Appellants were charged with representing their clients, which they did—admirably and ethically.

## 2. It is within the inherent power of a district court to decide whom to appoint.

The inner workings of a district court, particularly decisions by a district judge to manage the court's essential functions, are sacrosanct. Courts refer to these workings and decisions as a court's "inherent power," which is to be vigilantly protected. *Vondy v. Comm'rs Court of Uvalde Cnty.*, 620 S.W.2d 104, 110 (Tex. 1981). It is not the role of the Commissioners Court to second-guess core judicial

9

decisions. *Id.* The supervisory relationship between a district court and a Commissioners Court is, in fact, the reverse. It is the district court that is charged with supervising the Commissioners Court, pursuant to Texas Constitution, which states, "The District Court *shall have appellate jurisdiction and general supervisory control* over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law." Tex. Const. art. V, § 8 (emphasis added).

Here, the district court judge made an informed decision, within her inherent power, to appoint a few non-contract attorneys in DFPS termination cases. This decision was ordinary and far from unusual for a judge who manages a family law or criminal docket. Accordingly, the Commissioners Court has no right or authority to undermine the appointments by refusing to pay the appointed attorneys for their services. *See Vondy v. Comm'rs Court of Uvalde Cnty.*, 620 S.W.2d 104, 110 (Tex. 1981). The opposite is true: the Commissioners Court has an *obligation*—mandated by statute—to pay the appointed attorneys. Tex. Loc. Gov't Code Ann. § 115.021; *Mays v. Fifth Court of Appeals*, 755 S.W.2d 78, 80 (Tex. 1988) (Franklin, J., concurring) ("[A] court has the inherent power to compel the expenditure of those public funds which are reasonably necessary for the court to efficiently fulfill its constitutional function."). The Texas Supreme

10

Court provided a strong and powerful statement on inherent power in *Vondy v. Commissioners Court of Uvalde County*, a mandamus case described fully in Part II below. The Court stated:

> The legislative branch of this state has the duty to provide the judiciary with the funds necessary for the judicial branch to function adequately. If this were not so, a legislative body could destroy the judiciary by refusing to adequately fund the courts. The judiciary must have the authority to prevent any interference with or impairment of the administration of justice in this state.

*Vondy v. Comm'rs Court of Uvalde Cnty.*, 620 S.W.2d 104, 110 (Tex. 1981). This Court should heed the words of the Texas Supreme Court and remind the Smith County Commissioners Court that its reach has limitations.

### 3. All statutory prerequisites to payment were met.

After the district court appoints an attorney, several events occur before the attorney is entitled to payment, all of which occurred here.

First, the attorney must represent her client and keep track of her time for presentation to the district court. This is an important step in this case, illustrating that the Appellants were not in a position to request final payment prior to the Commissioners Court's "deadline" because they were still in the process of representing their clients. All work relevant to this case, however, was completed on or before August 20, 2013. (*See* C.R. at 27-28.)

11

Second, the attorney must present her invoice to the district judge, which the Appellants did on or before September 10, 2013. (*See* C.R. at 26.) This is required by Texas Family Code § 107.015(d), which states:

> (d)   A person appointed as a guardian ad litem or attorney ad litem shall complete and submit to the court a voucher or claim for payment that lists the fees charged and hours worked by the guardian ad litem or attorney ad litem. Information submitted under this section is subject to disclosure under Chapter 552, Government Code.

Tex. Fam. Code Ann. § 107.015(d). Additionally, one of the judge's roles is to ensure that the fee amounts are consistent with the fee schedule that applies to an attorney appointed under Title 3 Chapter 51, pursuant to Texas Family Code § 107.015(c). Title 3 Chapter 51, which is simply Texas Family Code Chapter 51, indexes its fee schedule to that of court-appointed criminal attorneys:

> [A]n attorney appointed under this section to represent the interests of a child shall be paid from the general fund of the county in which the proceedings were instituted according to the schedule in Article 26.05 of the Texas Code of Criminal Procedure, 1965.

Tex. Fam. Code Ann. § 51.10(i). Texas Code of Criminal Procedure art. 26.05 empowers each county to set its own hourly fee rate, which, in Smith County, is $75 per hour. The invoices the Appellants submitted reflect a rate of $75 per hour,

12

which is consistent with Texas statutory law and Smith County policy. (C.R. at 23-28.)

Third, the County Auditor is charged with examining and approving the invoices. The Texas Local Government Code provides:

> APPROVAL OF CLAIMS BY COUNTY AUDITOR.
> (a) In a county that has the office of county auditor, each claim, bill, and account against the county must be filed in sufficient time for the auditor to examine and approve it before the meeting of the commissioners court. A claim, bill, or account may not be allowed or paid until it has been examined and approved by the auditor.

Tex. Loc. Gov't Code Ann. § 113.064 (Vernon 2008). Here, this requirement was met on August 26, 2013, and September 10, 2013, as reflected in two letters sent from the County Auditor to the Commissioners Court. (C.R. at 23, 26.) The letters state:

> Attached is a compilation of the non-contract attorney invoices received from the 321st District Court for services rendered, yet unpaid, due to lack of budgetary funding. *These invoices were incurred as authorized* in the Family Code, Chapter 107.015 (c)(d) and *have been examined and approved for payment* by the County Auditor pursuant to LGC, Chapter 113.064 and 113.065.

(C.R. at 23, 26) (emphasis added). Once the Auditor examined and approved the invoices for payment, no discretion remained—the Commissioners Court had to act.

4. **The Legislature requires the County Commissioners Court to direct payment to court-appointed attorneys from the funds of the county.**

Two statutes, taken together, require the County Commissioners Court to tender payment to court-appointed attorneys from the county treasury. First, the Texas Family Code requires that the attorneys be paid by the county. The Code provides:

> If indigency of the parents is shown, an attorney ad litem appointed to represent a child or parent in a suit filed by a governmental entity *shall be paid from the general funds of the county* according to the fee schedule that applies to an attorney appointed to represent a child in a suit under Title 3 as provided by Chapter 51.

Tex. Fam. Code Ann. § 107.015(c) (emphasis added). Second, the Texas Local Government Code specifies that it is the County Commissioners Court's responsibility to tender payment. The Code provides:

> The commissioners court of a county shall audit and settle all accounts against the county and shall direct the payment of those accounts.

Tex. Loc. Gov't Code Ann. § 115.021. Here, the County Auditor examined and approved the accounts for payment, and sent the invoices to the County Commissioners. (C.R. 23, 26.) At that point, all the County Commissioners had to do was "direct the payment of those accounts." Tex. Loc. Gov't Code Ann. § 115.021.

As indicated above, the Legislature's use of the modal verb "shall" reflects a mandatory duty, i.e. a ministerial act. Tex. Gov't Code Ann. § 311.016(1)-(2); *Smith v. Flack*, 728 S.W.2d 784, 789-790 (Tex. Crim. App. 1987) (explaining that the phrase "shall be paid from the general fund of the county" reflects a mandatory, ministerial duty). "Shall" appears in both Texas Family Code § 107.015(c), which entitles the Appellants to payments, and in Texas Local Government Code § 115.021, which obligates the County Commissioners Court as the payor. "May" or "might" appears in neither of these statutes. Therefore, the act of directing payment to the Appellants is ministerial. Tex. Gov't Code Ann. § 311.016(1)-(2).

## B. The Appellants have no other adequate remedy at law.

In a case styled *Smith v. Flack*, described fully in Part II below, the Texas Court of Criminal Appeals discussed what it means to have an "adequate remedy at law," which is the second element of mandamus relief. *Smith v. Flack*, 728 S.W.2d 784, 789 (Tex. Crim. App. 1987). There, a County Commissioners Court argued

that court-appointed criminal attorneys were not entitled to mandamus relief because they had an alternative remedy at law, which was to sue in civil court as judgment creditors of the county. *Id.* at 792-93. The Court of Criminal Appeals agreed that the attorneys had a remedy, but disagreed that it was adequate, stating, "In some cases, a remedy at law may technically exist; however, it may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate or ineffective as to be deemed inadequate." *Id.* at 792. The Court further cited *Highland Park v. Dallas Railway Co.*, a prior civil opinion, in which the Texas Court of Appeals held that an adequate remedy is one that is "equally convenient, beneficial, and effective as the proceeding by mandamus." *Highland Park v. Dallas R. Co.*, 243 S.W. 674, 681 (Tex. App. 1922).

The Appellants are in the precise situation of the court-appointed attorneys in *Smith v. Flack*. Although some other avenue for relief may technically exist, there is no disputing that it would burdensome and inconvenient in comparison to seeking a writ of mandamus, which is direct and efficient. Therefore, just as in *Smith v. Flack*, the Appellants have no other adequate remedy at law. Accordingly, because the Appellants have also demonstrated that the County Commissioners Court has a ministerial duty to direct payment, this Court should reverse and instruct the district court to issue a writ of mandamus.

16

**II.** **The two highest Texas courts have explored these issues under similar circumstances and held that mandamus must issue.**

**A.** **In *Smith v. Flack,* a case directly on point, the Texas Court of Criminal Appeals issued a writ of mandamus compelling a Commissioners Court to pay court-appointed attorneys.**

The facts of *Smith v. Flack* are identical to this case except that *Smith v. Flack* involved court-appointed criminal defense attorneys and this case involves court-appointed family law attorneys. *Smith v. Flack*, 728 S.W.2d 784, 786 (Tex. Crim. App. 1987). The legal underpinnings of *Smith v. Flack* are also identical except for one difference that actually strengthens the Appellants' position: it is harder to acquire mandamus in a criminal case than a civil one. *See* Marialyn Barnard et al., *Is My Case Mandamusable?: A Guide to the Current State of Mandamus Law*, 45 St. Mary's L.J. 143, 180-81 (2014). It would follow that if the attorneys in *Smith v. Flack* received mandamus, then the Appellants are certainly entitled to the same relief.

In *Smith v. Flack*, a district judge approved payment of attorney fees to four court-appointed criminal defense attorneys for work they had performed. *Smith*, 728 S.W.2d at 787. The judge's order was then presented to the County Auditor. *Id.* After consulting with the County Board of District Judges, the County Auditor approved only a reduced fee amount; the County Commissioners Court agreed and

17

tendered payment of the reduced fees. *Id.* at 787-88. In the aggregate, the attorney's fee amounts were reduced by the County Auditor and County Commissioners from $3,500 to $2,425. *Id.* The court-appointed attorneys then sued the County Auditor and County Commissioners, seeking a writ of mandamus compelling the payment of their full fee amounts. *Id.* at 786.

The Court of Criminal Appeals applied a two-part test to determine whether mandamus should issue: a relator must establish that (1) the act he seeks to compel is ministerial, and (2) no other adequate remedy at law is available. *Id.* at 789. In order to determine whether the act of payment was ministerial, the Court examined whether the operative payment statute was mandatory or discretionary. *Id.* A plain reading of two statutes convinced the Court that the County Commissioners' act of payment was ministerial. First, Texas Code of Criminal Procedure article 26.05 stated that court-appointed attorneys "*shall* be paid from the general fund of the county in which the prosecution was instituted." *Id.* (emphasis in opinion). Second, Vernon's Annotated Civil Statutes article 2351(10) stated that "each commissioners court shall . . . *audit and settle* all accounts against the county and *direct their payment.*" *Id.* at 790 (emphasis in opinion). Based on the Legislature's chosen language, the Court concluded that the attorneys sought to compel the County Commissioners to perform a ministerial act. *Id.* at 792.

After finding that the first element was satisfied, the Court turned to the second element, which concerns whether the attorneys had another adequate remedy at law. *Id.* The Commissioners Court argued, and the attorneys conceded, that there was technically another remedy at law: the attorneys could file a separate suit in civil court seeking to recover as creditors of the county. *Id.* Although true, the Court found this argument unpersuasive, deeming the remedy inadequate because it was characteristically uncertain, tedious, burdensome, slow, inconvenient, inappropriate or ineffective. *Id.* Therefore, holding that there was no other adequate remedy at law, the Court conditionally granted the attorneys' petition for writ of mandamus, stating that it would issue if the Commissioners Court did not tender payment in accordance with the court-approved amounts. *Id.* at 794.

The similarities between *Smith v. Flack* and this case are striking and demand a holding in favor of the Appellants. Factually, both involve unpaid or underpaid court-appointed attorneys who sought a writ of mandamus compelling the Commissioners to comply with the wishes of the Legislature and district court that appointed the attorneys. Legally, the cases are identical. First, a comparison of the language of the statutes:

19

| *Smith v. Flack* | This case |
|---|---|
| Court-appointed criminal defense attorneys "*shall be paid from the general fund of the county . . .*" Tex. Code of Crim. Pro. art. 26.05 (Supp. 1987). | Court-appointed attorneys in DFPS termination suits "*shall be paid from the general funds of the county . . .*" Tex. Fam. Code Ann. § 107.015(c). |
| ". . . each commissioners court shall . . . audit and settle all accounts against the county and direct their payment." V.A.C.S. art. 2351(10) (Supp. 1987). | "The commissioners court of a county shall audit and settle all accounts against the county and shall direct the payment of those accounts." Tex. Loc. Gov't Code Ann. § 115.021. |

Second, the remedies at law are identical. Although there are technically other avenues, only one is adequate: mandamus relief. Therefore, this Court should strongly heed the guidance of the Texas Court of Criminal Appeals and reverse.

**B.   The Texas Supreme Court's reasoning in *Vondy v. Commissioners Court of Uvalde County* strongly urges a holding in favor of the Appellants.**

Although not as factually similar as *Smith v. Flack*, the Texas Supreme Court's opinion in *Vondy v. Commissioners Court of Uvalde County* probes many of the issues involved in this case and strongly urges a holding in favor of the Appellants. *See generally Vondy v. Comm'rs Court of Uvalde Cnty.*, 620 S.W.2d 104 (Tex. 1981).

In *Vondy*, a man was elected constable of a county precinct. *Id.* at 105. After he was sworn in, the constable went before the County Commissioners court and requested that they set his salary. *Id.* The Commissioners, by majority vote, decided not to provide the constable with any salary. *Id.* The constable then petitioned the

district court for a writ of mandamus, which the court denied. *Id.* The appellate court dismissed his case on a technicality[3] and the constable appealed to the Texas Supreme Court. *Id.*

In order to determine whether a writ of mandamus should issue, the Court examined the relevant statute, which stated:

> In all counties in this State, the Commissioners Courts shall be authorized to determine whether precinct officers shall be compensated on a fee basis or on a salary basis, with the exception that it shall be mandatory upon the Commissioners Courts, to compensate all justices of the peace, constables, deputy constables and precinct law enforcement officers on a salary basis beginning January 1, 1973 . . . .

Tex. Const. art. XVI, § 61 (amended 1972); *Vondy*, 620 S.W.2d at 108. The County Commissioners made two arguments in light of the statutory mandate: (1) they were only required to set a salary if the constable was compensated at all; and, alternatively, (2) by not setting a salary, they did set a salary at $0 per year. *Vondy*, 620 S.W.2d at 108. The Court did not find the Commissioners' arguments

---

[3] A discussion of the intermediate court's dismissal is not relevant to this case. The appellate court was concerned because the constable only sued the county commissioners who voted not to give him a salary, which left one commissioner out of the suit. The appellate court believed this was a procedural defect which doomed the constable's ability to appeal his case. The Texas Supreme Court, however, disagreed. Regardless, that issue is not presented here because Appellants have sued all of the County Commissioners as well as the Commissioners Court. Therefore, Appellants' description of the *Vondy* opinion will omit the lengthy discussion of whether all commissioners must be included in the petition for writ of mandamus.

persuasive and concluded that the district court should have granted the constable's petition for writ of mandamus because the Commissioners had a ministerial duty to set a salary. *Id.* at 109. Further, the Court noted, even if there were some discretion, mandamus should still issue because the Commissioners abused their discretion. *Id.* Finally, and central to this case, the Court observed that to not issue mandamus relief would interfere with the proper functioning of the judicial system. *Id.* at 110.

Here's the import of *Vondy* as it relates to this case: the Texas Supreme Court has stated, in no uncertain terms, that a County Commissioners Court cannot oppose a nondiscretionary statutory instruction by the Legislature, even in the guise of budgetary concerns. *Id.* at 109-110. Moreover, the district court must issue a writ of mandamus as an act of self-preservation when the Commissioners Court withholds funds in such a way that will interfere with the function of the court. *Id.* In order to act consistent with *Vondy*, this Court should reverse and instruct the district court to issue a writ of mandamus to the Smith County Commissioners Court compelling it to direct payment to the Appellants.

22

## PRAYER

The Appellants request that this Court reverse the district court's decision to deny their Petition for Writ of Mandamus.

The Appellants request that this Court remand their case to the district court with instructions that the district court:

(1) calculate what the Appellants are owed, in accordance with the invoices submitted to the County Auditor by the 321st District Court; and

(2) issue a writ of mandamus compelling the Smith County Commissioners Court and its members to direct payment to the Appellants for the owed amounts.

Respectfully submitted,

/s/ *Brandon Beck*
Brandon Beck

Attorney for Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, I certify that this brief contains no more than 6,200 words.

/s/ *Brandon Beck*
Brandon Beck

Attorney for Appellants

## CERTIFICATE OF SERVICE

I certify that a copy of the Appellants' brief was served upon Appellees through its counsel of record by facsimile, on this, the 29th day of December, 2014.

/s/ *Brandon Beck*
Brandon Beck

Attorney for Appellants

# Appendix 1

## Appendix 1: A Flowchart of the Statutory Framework

| Texas Family Code § 107.012 |
|---|
| In a suit filed by a governmental entity requesting termination of the parent-child relationship or to be named conservator of a child, the court shall appoint an attorney ad litem . . . |

↓

| Texas Family Code § 107.015 |
|---|
| . . . an attorney ad litem appointed to represent a child or parent in a suit filed by a governmental entity shall be paid from the general funds of the county . . . |

↓

| Texas Local Gov't Code § 113.064 |
|---|
| . . . each claim, bill, and account against the county must be filed in sufficient time for the auditor to examine and approve it before the meeting of the commissioners court. |

↓

| Texas Local Gov't Code § 115.021 |
|---|
| The commissioners court of a county shall audit and settle all accounts against the county and shall direct the payment of those accounts. |