

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. WR-86,920-02
---

### IN RE STATE OF TEXAS EX REL. BRIAN W. WICE, Relator

### v.

### THE FIFTH JUDICIAL DISTRICT COURT OF APPEALS, Respondent

---
### ON APPLICATION FOR A WRIT OF MANDAMUS
### CAUSE NOS. 05-17-00634-CV, 05-17-00635-CV, & 05-17-00636-CV
### IN THE FIFTH COURT OF APPEALS
### COLLIN COUNTY
---

**ALCALA, J., filed a dissenting opinion.**

### DISSENTING OPINION

The Court's decision today will likely affect an overwhelming number of criminal cases in Texas and will possibly result in even more claims of ineffective assistance of counsel for indigent defendants. Today, this Court holds that a trial judge may not pay an appointed attorney a reasonable fee under circumstances in which that fee conforms with the fee schedule adopted by the local district judges. More specifically, this Court holds that courts must pay a fixed fee to all appointed attorneys when that is the only type of fee listed

in a fee schedule, even when the payment of that amount is manifestly unjust in light of the circumstances of the case. On that basis, this Court upholds the court of appeals's decision compelling the trial court to vacate its order of payment for the appointed counsel, special prosecutor Brian Wice, relator.[1] For three independent and alternative reasons, I respectfully disagree with this Court's analysis and holding. First, the trial judge's order conformed to the applicable rules for Collin County: the judge's order met the terms of the regulatory scheme for the payment of appointed counsel as set forth in Collin County's Local Rule 4.01(B). That rule allowed for payments that varied from the fixed amounts listed in the fee schedule in "unusual circumstances or where the fee would be manifestly inappropriate because of circumstances beyond the control of the appointed counsel."[2] The trial judge, acting in accordance with the applicable local rules, did not violate any ministerial duty or act in contravention of any clearly established legal principles, and the court of appeals, therefore, erred by ordering him to rescind his order. Second, to the extent that it can be argued that the trial judge's order, though in compliance with Local Rule 4.01(B), was nevertheless unauthorized because it violated Texas's statutory scheme for the payment of appointed attorneys set forth in Code of Criminal Procedure Article 26.05, that issue is one of first

---

[1] The complained of order in this case is the trial court's second order for payment of attorney's fees to relators. Commissioners Court paid the trial court's first order for payment of attorney's fees to relators without complaint. Unless specified otherwise, all references to the trial court's order are to the second order. Furthermore, Brian Wice is the named relator, but he is assisted by other special prosecutors who are also affected by the trial court's second order of payment.

[2] *See* former Local Rule 4.01(B).

impression, the answer is unclear, and therefore, it is not a proper basis for a petition for writ of mandamus.[3] Due to the ambiguity as to whether the local regulation conformed to the state statutory scheme, the court of appeals erred by declaring the local regulation invalid through a petition for a writ of mandamus and by ordering the trial judge to rescind his order on that basis. Third, because the statutory language in Article 26.05, when viewed as a whole, is ambiguous, I consider the policy implications of this Court's interpretation of the statute. This analysis suggests that this Court's interpretation of Article 26.05 will ultimately lead to less effective representation for indigent defendants, more expensive costs for local counties for appointed attorneys, and more broadly, the undermining of the Legislature's and Collin County's directives for the reasonable payment of appointed attorneys. This Court's majority opinion's decision to deny paying a reasonable fee to the special prosecutors in this case is effectively a decision to deny paying a reasonable fee to defense attorneys appointed to represent indigent defendants, and that will likely result in more cases of ineffective assistance of counsel. Also, because this Court's majority opinion prohibits trial judges from ever deviating from the listed rates in a fee schedule and requires fee schedules to have only fixed rates and/or set-forth ranges of rates, those rates, to ensure that they are reasonable in all possible cases, will necessarily have to include a wider range of available options with a higher outer limit. I conclude that that system will eventually cost counties more than the

---

[3]      *See In re Allen,* 462 S.W.3d 47, 53 (Tex. Crim. App. 2015) (observing that a mandamus case "must be decided on the existing law alone" and is not an appropriate vehicle to "interpret statutory language, clarify this Court's precedent, or create law where there is none").

instant fee schedule that generally provided for fixed fees but also included an opt-out provision available only for exceptional cases. Furthermore, more broadly, this Court's majority opinion improperly legislates from the bench by construing Article 26.05 in a manner that disregards the Legislature's mandate and the Collin County district judges' fee schedule provisions that each require the payment of reasonable fees to all appointed attorneys. To suggest that the undesirable consequences of this Court's majority opinion's judicially created policy are the fault of the Legislature or the Collin County district judges is an unfair attack on those entities that expressly provided for measures to ensure reasonable fees for appointed attorneys. It is improper for a decision granting mandamus relief to create new law, but it is an even more dire situation when the new law, as here, results in manifest injustice due to its newly created policy. For all of these reasons, I respectfully disagree with the court of appeals's decision to compel the trial court to vacate its payment order, and with this Court's majority opinion's decision to leave the court of appeals's order intact.

## I. Background

After the district judges of Collin County recused themselves from all matters involving the underlying criminal prosecution in this case, a judge from Tarrant County was appointed to hear the case.[4] And after the Collin County District Attorney's office recused

---

[4] In June 2017, the assigned Tarrant County judge signed an order transferring these cases to Harris County. A Harris County judge is now presiding over these criminal proceedings. The proceedings have been stayed pending the resolution of the instant petition for mandamus. *See In re State ex rel. Wice,* No. WR-86,920-02, 2017 WL 4276108 (Tex. Crim. App. Sept. 25, 2017) (per curiam).

itself from these proceedings, the Local Administrative Judge of Collin County appointed

Brian Wice and other attorneys to represent the State as special prosecutors in the case.

The administrative judge agreed to pay the special prosecutors under a fee schedule

created by the district judges of Collin County that was described in the Local Rule 4.01,

which governs the payment of attorneys appointed to criminal cases.[5] That local rule

provided for two options for trial judges: (1) payment of fixed fees for pretrial preparation

and days spent in trial, with different set fixed fees for specifically described types of cases,[6]

---

[5]     At the time of the challenged order of payment, the Collin County district judges had enacted Rule 4.01 for the payment of appointed attorneys, which stated,

**SECTION FOUR**
**PROCEDURES FOR ATTORNEY COMPENSATION**
4.01. Attorney Fee Schedule
A. The District Judges adopt, pursuant to Article 26.05 Tex. Code of Crim. Proc., a fee schedule for appointed attorneys, attached hereto as "Fee Schedule for Appointed Attorneys."
B. The judge presiding over a case may authorize payment to appointed counsel that varies from the fee schedule in unusual circumstances or where the fee would be manifestly inappropriate because of circumstances beyond the control of the appointed counsel.

[6]     As of the time of the challenged order of payment in this case, the fee schedule that set forth the amounts of the fixed fees stated as follows:

**FEE SCHEDULE FOR INDIGENT DEFENSE COURT**
**APPOINTED ATTORNEYS**

In all felony cases, except as hereafter provided, counsel shall be paid according to the following fee schedule, without exception, except as provided for in Section 4.01(B):

PLEAS:
Death Penalty: $150.00 per hour
Capital, non-death penalty: $100.00 per hour
First Degree Felony: $1,000.00

or (2) payment of fees that varied from the fixed fee amounts when those amounts would be either inadequate due to unusual circumstances or manifestly inappropriate because of circumstances beyond the control of the appointed attorney. After their appointment to the underlying case, the special prosecutors performed work and they submitted two vouchers for payment, the first of which was paid without complaint, but the second of which resulted in the instant litigation.

In determining appropriate attorney's fees for the appointed special prosecutors in this case, the administrative judge departed from the fixed amounts provided for in Rule 4.01(A), which would have permitted the special prosecutors to be paid fixed fees of $1,000 for pretrial preparation and $1,000 per day for trial work, with a discretionary adjustment of up to $1,000 per case. The administrative judge determined that such fees would be inappropriate in light of the particular circumstances of this case, and relying on the provisions in Rule 4.01(B), he instead ordered fees in the amount of $300 per hour. During

---

Second Degree Felony: $750.00
Third Degree and State Jail Felonies: $500.00
Additional cases: $250.00 (per case at discretion of the judge)

TRIALS:
Pre-Trial preparation: $1,000.00
Trial, per ½ day: $500.00

DISCRETIONARY ADJUSTMENT
Per case adjustment, not to exceed $1,000.00
Child Advocacy Center cases and all cases with a minimum 15 year sentence:
Per case adjustment, not to exceed: $3,000.00
[mental health cases]:
Per case adjustment, not to exceed: $1,750.00

their first year of work on the case, the attorneys submitted a voucher for $254,908, of which $242,025 was for attorney's fees for work that was performed and paid at the agreed upon rate of $300 per hour. In January 2016, the trial judge approved the first voucher, and it was paid by the auditor with the approval of the Collin County Commissioners Court. The judge's order referenced Local Rule 4.01(B) and provided that "payment of attorneys [sic] fees to Attorneys Pro Tem in these causes shall deviate from the fee schedule and each attorney shall be paid the amount in the hourly rate ordered to be paid in the Appointed Counsel Request for Compensation as submitted by the respective Attorney Pro Tem and as approved by the Court." The judge's order indicated that it was enforceable by all sanctions available to the court. This first order of payment is not at issue in the instant litigation.

In January 2017, during their second year of work, the attorneys submitted another voucher that included a request for $199,575 for fees billed at the same rate of $300 per hour. The trial judge approved the voucher with language in the second order that was essentially identical to that in the first order. This time, however, the auditor refused to pay the voucher due to instructions it received from the Commissioners Court. Subsequently, the Commissioners Court sought a writ of mandamus against the trial judge in the Fifth Court of Appeals, arguing that the second order of payment was void and asking that court to compel the trial judge to vacate his order.

In their petition for mandamus relief before the court of appeals, the Commissioners Court asserted that the underlying provision in Local Rule 4.01(B) that permitted the trial

judge to pay a fee outside of the fixed fees in the fee schedule violated Article 26.05 of the Code of Criminal Procedure, which governs the payment of appointed counsel under these circumstances. The Commissioners Court contended that, because Local Rule 4.01(B) did not comply with Article 26.05, the trial judge lacked authority to order the higher payment amount by relying on that local rule and thus his order was void.

The court of appeals agreed with the Commissioners Court that the trial judge lacked authority to order payment that exceeded the fixed amount provided for in the fee schedule. *See In re Collin County*, 528 S.W.3d 807, 812 (Tex. App.—Dallas 2017). The court of appeals determined, "After examining the language of article 26.05 and considering the clear objectives of that statute, we conclude the criminal district court judges exceeded the authority delegated to them under 26.05 by adopting local rule 4.01B. Article 26.05 mandates that attorney's fees be paid according to a schedule. Both rule 4.01B and Judge Gallagher's second order of payment contradict this mandate." *Id.* at 813. Thus, the court of appeals reasoned that it was essentially immaterial that the trial judge's order complied with Local Rule 4.01(B) because that rule was impermissible in light of the requirements of Article 26.05. Having determined that the second order of payment was void, the court of appeals conditionally granted mandamus relief to the Commissioners Court. *Id.* at 815. Relator then filed the instant petition for mandamus relief in this Court challenging the Fifth Court of Appeals's decision.

## II. Analysis

I conclude that this Court's majority opinion errs by failing to compel the Fifth Court of Appeals to rescind its order that requires the trial judge to vacate his payment order in favor of relators. I support my conclusion with three reasons that I summarize here and explain more fully below. The Fifth Court of Appeals erred by voiding the trial court's order because the order fully complied with the applicable local rules for the payment of appointed attorneys in Collin County that had been properly enacted by the district judges of that county. Also, the court of appeals's decision is erroneous because it fails to comport with the mandamus standard of review in its creation of new law on a matter of first impression. Furthermore, the court of appeals's decision misinterprets the statutory language in a way that results in legislating from the bench to create a new policy resulting in manifest injustice.

**A. The Trial Judge's Order Should Not Be Vacated Because it Conformed with the Applicable Local Rules for the Payment of Appointed Counsel**

Here, the trial judge followed the applicable local rules for the payment of appointed counsel and his decision to pay counsel at a non-fixed rate was a discretionary decision within the scope of those rules. Absent some clearly controlling law that would have undermined the judge's discretionary authority pursuant to the local rules, the court of appeals should not have compelled the trial judge to vacate his order.

To be entitled to mandamus relief, the relator must show two things: (1) he has no adequate remedy at law, and (2) he seeks to compel a ministerial act, not one involving a discretionary or judicial decision. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013). If the relator fails to satisfy either aspect of this two-part test, then relief should

be denied. *Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex. Crim. App. 2011). Because I conclude that the Commissioners Court has failed to meet the ministerial-act prong, I will address only that aspect of the mandamus standard and will not address the adequate-remedy prong.

To satisfy the ministerial-act requirement, it must be shown that the party seeking relief has a clear right to the relief sought, in the sense that the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles. *Weeks*, 391 S.W.3d at 122; *see also Powell v. Hocker,* 516 S.W.3d 488, 495 (Tex. Crim. App. 2017) (to satisfy ministerial-act requirement, party must show that the "governing law is of such absolute clarity and certainty that nothing is left to the court's discretion") (citing *State ex rel. Young v. Sixth Judicial District Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007)). A ministerial act, by its nature, does not involve the use of judicial discretion; it must be positively commanded and so plainly prescribed under the law as to be free from doubt. *In re Allen*, 462 S.W.3d 47, 49-50 (Tex. Crim. App. 2015) (citing *State ex rel. Hill v. Court of Appeals for Fifth Dist.*, 34 S.W.3d 924, 928 (Tex. Crim. App. 2001)). It is proper to order a court to rule in a particular way only when the law invoked is "'definite, unambiguous, and unquestionably applies to the indisputable facts of the case.'" *Allen*, 462 S.W.3d at 50 (quoting *Young*, 236 S.W.3d at 210).

Here, the trial judge's order of payment was in accordance with the applicable

provisions in the schedule of fees pursuant to Local Rule 4.01(B), which expressly permitted payment "that varies from the fee schedule in unusual circumstances or where the fee would be manifestly inappropriate because of circumstances beyond the control of the appointed counsel." No one appears to dispute that the trial judge's order strictly conformed with the requirements in Rule 4.01(B). Mandamus relief is inappropriate against the trial judge for the simple reason that the judge expressly complied with the local rules for the payment of appointed attorneys. The trial court had the discretionary authority under Local Rule 4.01(B) to determine that this case involves unusual circumstances that called for the higher fees due to a manifest necessity. This type of discretionary authority in conformance with the applicable local regulation is not a proper subject of mandamus relief.

### B. The Trial Judge's Order for the Payment of Relators Should Not Be Vacated Because It is Inappropriate to Create a New Principle of Law For the Purpose of Granting Mandamus Relief

This Court reaches its flawed determination upholding the court of appeals's order only by creating an entirely new principle of law that is an inappropriate basis for mandamus relief. Although no one appears to dispute that the trial judge's order fully comported with the provisions in Local Rule 4.01(B), this Court's majority opinion holds that the order must nonetheless be vacated under the theory that Rule 4.01(B) fails to comport with the applicable statutory scheme in the Code of Criminal Procedure. But this Court's majority opinion's evaluation of that legal issue involves a matter of first impression, it requires creation of new principles of law, and it results in an interpretation of the ambiguous

statutory scheme in a manner that disregards important parts of the statute.

As we have recently explained, "If the law surrounding a court's action is unclear, mandamus relief may not issue despite how unwise we think the action may have been . . . . [A] mandamus proceeding is not the appropriate place to interpret statutory language, clarify this Court's precedent, or create law where there is none." *In re Allen*, 462 S.W.3d at 52-53. Although an issue of first impression may sometimes qualify for mandamus relief, the principle of law underlying that issue must be one that has been "clearly established." *See Weeks,* 391 S.W.3d at 122. As I will show below, the foregoing requirements for mandamus relief are not met here, given that there are no clearly controlling, well-settled, unequivocal legal principles prohibiting the trial court's payment order that was made pursuant to Local Rule 4.01(B).

Two articles in the Code of Criminal Procedure govern the compensation of the appointed special prosecutors in this case. Code of Criminal Procedure Article 2.07 provides that, in the event that an attorney for the State is disqualified or otherwise unable to perform the duties of his office, the trial court may appoint a special prosecutor, and the court must compensate that attorney in the same manner as he would compensate an attorney representing an indigent defendant. *See* TEX. CODE CRIM. PROC. art. 2.07(a), (c). Article 2.07 states that, when he is not otherwise employed as an attorney for the State, an attorney pro tem "shall receive compensation in the same amount and manner as an attorney appointed to represent an indigent person." *Id.* art. 2.07(c). This provision thus compels the payment

of a special prosecutor in accordance with the requirements governing the payment of attorneys appointed to represent indigent defendants. Because the judge's order of payment had to comply with the provisions applicable to attorneys appointed to represent indigent people, I turn next to those applicable provisions in Code of Criminal Procedure Article 26.05.

At the center of the dispute in this case is the meaning of the language in Article 26.05, entitled, "Compensation of Counsel Appointed to Defend." The statute states, in relevant part,

> (a) A counsel . . . shall be paid a reasonable attorney's fee for performing the following services, based on the time and labor required, the complexity of the case, and the experience and ability of the appointed counsel: . . . [the statute goes on to list four subsections detailing the types of work that qualify for compensation under the statute].
>
> (b) All payments made under this article shall be paid in accordance with a schedule of fees adopted by formal action of the judges of the county courts, statutory county courts, and district courts trying criminal cases in each county. On adoption of a schedule of fees as provided by this subsection, a copy of the schedule shall be sent to the commissioners court of the county.
>
> (c) Each fee schedule adopted shall state reasonable fixed rates or minimum and maximum hourly rates, taking into consideration reasonable and necessary overhead costs and the availability of qualified attorneys willing to accept the stated rates . . . .

*Id*. art. 26.05.

Here, the judge's order of payment easily complied with the first two of the three subsections in Article 26.05. As required under Article 26.05(a), the judge's order compensated counsel at what he believed to be the reasonable rate of $300 per hour due to

the complexity of the case and the experience and abilities of counsel. Additionally, as required under Article 26.05(b), the trial judge's payment order was made in accordance with the schedule of fees set forth in Local Rule 4.01. Although he could have opted to pay the special prosecutors under the portion of the fee schedule in Rule 4.01(A) describing fixed fees, the trial judge used his discretion to pay them under the portion of the fee schedule describing variable fees under Rule 4.01(B) due to the unusual circumstances of this case. Given that the judge's payment of attorney's fees complied with subsections (a) and (b) of Article 26.05, the dispute in this case centers on the meaning and applicability of subsection (c) and whether that subsection clearly disallows payments under Rule 4.01(B).

To ascertain the meaning of Article 26.05(c), we must apply the rules of statutory construction. We are required, in construing statutes, to view the language in context and give effect to the statutory scheme as a whole. *See Yazdchi v. State*, 428 S.W.3d 831, 837 (Tex. Crim. App. 2014) (in construing statutes, we must presume that the Legislature intended for the entire statutory scheme to be effective, and we must "read words and phrases in context"). We should "presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible." *Ex parte Perry,* 483 S.W.3d 884, 902 (Tex. Crim. App. 2016).

Properly viewing subsection (c) of Article 26.05 in the context of the entire statutory scheme, the relevant language is ambiguous with respect to the propriety of local rule 4.01(B). Subsection (c) describes what a fee schedule "shall state," but it does not expressly

disallow a fee schedule from including other provisions governing fees in addition to listing fixed fees and ranges of fees. *See* TEX. CODE CRIM. PROC. art. 26.05(c). Subsection (c) simply describes what constitutes a proper fee schedule by stating, "Each fee schedule adopted shall state reasonable fixed rates or minimum and maximum hourly rates, taking into consideration reasonable and necessary overhead costs and the availability of qualified attorneys willing to accept the stated rates[.]" *Id.* art. 26.05(c). The instant fee schedule sets forth fixed rates but not ranges of fees that would provide for minimum and maximum rates. To account for those situations where the fixed fee would be inappropriate, as here, the Collin County schedule of fees permitted the trial judge to pay a reasonable fee for unusual circumstances or for times when a fixed fee would be manifestly inappropriate. Although nothing about the language in subsection (c) expressly forbids the type of opt-out provision contained in Local Rule 4.01(B), this Court's majority opinion concludes that the statute is plain in that respect.

Even if the majority opinion has correctly assessed the language in subsection (c) as limiting counties to paying appointed attorneys with either fixed fees or ranges of fees, that subsection is not dispositive here because it must be read in the context of the entire statute that suggests that variable fees are permitted in some circumstances. In contrast to the language in subsection (c) that merely describes the requirements of a fee schedule, the other statutory provisions in subsections (a) and (b) of Article 26.05 more directly refer to the trial court's authority to order payment under the statute. Subsection (a) requires that payments

to appointed counsel shall be "reasonable" in light of the particular circumstances of the case (the "time and labor required, the complexity of the case, and the experience and ability of the appointed counsel"), whereas subsection (b) provides that payments shall be "paid in accordance with" the fee schedule that was adopted by formal action of the local judges. *See id.* art. 26.05(a), (b). These provisions together suggest that a trial judge has discretion to order any payment that he deems reasonable under the circumstances of the case, so long as it is based on the terms of the formally adopted fee schedule. *See id.*[7] More specifically as it applies to this case, the trial judge's payment comported with Article 26.05(a) by considering the payment amount that was appropriate based on the complexity of the case and the experience of appointed counsel. *See id.* Also as it applies to this case, the trial judge's payment comported with Article 26.05(b) because his order complies with the provisions in Local Rule 4.01 that permitted these amounts. I disagree with this Court's majority opinion that the language in Article 26.05 subsection (c) merely indicating that a fee schedule "shall state reasonable fixed rates or minimum and maximum hourly rates" plainly and undeniably limits the apparent discretion afforded by subsections (a) and (b). I also disagree with this Court's majority opinion's holding that treats subsection (c) as overriding the provisions in subsections (a) and (b), so as to require that these special prosecutors be paid a fixed fee that is manifestly unjust. Rather, if this Court's majority opinion is correct

---

[7] *See also In re Perkins*, 512 S.W.3d 424, 432 (Tex. App.—Corpus Christi 2016) (observing that the term "reasonable" in Article 26.05(a) "connotes a discretionary act rather than a mandatory one" and that "article 26.05 as a whole recognizes the application of judicial discretion to an award of attorney's fees").

that the three subsections cannot be reconciled, then the proper remedy should be to invalidate subsection (c) because, as applied in this particular case in which there is only a fixed fee rather than ranges of fees that would permit accommodations for discrepancies in time and labor required, the complexity of the case, and the experience and ability of counsel, subsection (c) is in complete conflict with the other two subsections. If any subsection must be invalidated here, then it is subsection (c) only. In any event, because the interplay between the three subsections is not absolutely clear with respect to the propriety of Local Rule 4.01(B), Article 26.05 is not a proper basis for granting mandamus relief to the Commissioners Court. *See Powell*, 516 S.W.3d at 495 (to justify mandamus relief, the governing law must be of such "absolute clarity and certainty that nothing is left to the court's discretion").[8]

Furthermore, given that this Court's majority opinion's holding means that Collin County's fee schedule permits only fixed fees, this Court's interpretation ultimately requires payment of a fee that is unreasonable, in contravention of the statutory language in Article

---

[8]     This Court's majority opinion asserts that we have already held in a prior decision that the language in Article 26.05 is clear and unambiguous, such that the statute properly affords Commissioners Court a basis for mandamus relief here. That assertion is misleading because the case cited by the majority opinion, *Smith v. Flack*, was decided more than thirty years ago when Article 26.05 was worded completely differently from the current version. *See* 728 S.W.2d 784 (Tex. Crim. App. 1987). Following this Court's decision in *Smith* that had interpreted the former version of Article 26.05, the Legislature rewrote the statute to include the language in subsection (c) that is now at issue in this case. *See* Act of June 19, 1987, S.B. 1108, 70th Leg., R.S. Because the challenged language in subsection (c) was not included in the former version of Article 26.05, this Court's holding in *Smith* analyzing the former statute is irrelevant for purposes of resolving whether the current statutory language is plain or ambiguous.

26.05 subsection (a) that requires the payment of a reasonable fee. *See* TEX. CODE CRIM. PROC. art. 26.05(a). Here, as noted above, the fee schedule listed only fixed amounts for services (for example, an amount of $1,000 for pretrial work that is at issue here), and did not list any hourly rates or a range of rates for various types of work. A fixed fee that applies to all cases that fall within broad general categories does not satisfy the requirement in Article 26.05(a) that fees "shall be . . . reasonable . . . based on the time and labor required, the complexity of the case, and the experience and ability of the appointed counsel[.]" *Id.* § 26.05(a). By striking down Local Rule 4.01(B) and requiring strict adherence to the fixed amounts listed in the fee schedule, the majority opinion's interpretation of Article 26.05, as applied here, eviscerates the reasonableness requirement in subsection (a) because the same amount of payment is required for every case, regardless of the unique circumstances listed in subsection (a) that might render the fixed amount unreasonable.[9] It is wholly improper to subject the trial judge to mandamus under these circumstances, given that the majority's interpretation of the statute, as applied here, will require the trial judge to pay the fixed fee amount (here, at most, $2,000, taking into account the $1,000 amount listed for pretrial preparation and the $1,000 discretionary adjustment), which is an amount that no one can seriously contend is reasonable. This Court should not adopt an interpretation of the statute

---

[9]      Even if this Court's majority opinion is correct that providing for a range of fees in a fee schedule is the appropriate way to incorporate Article 26.05(a)'s requirement that fees be reasonable based on "the time and labor required, the complexity of the case, and the experience and ability of the appointed counsel," then that assessment does not assist in the resolution of the instant proceeding. This fee schedule, according to this Court's majority opinion, permitted only a fixed fee amount. Whether a range of fees would satisfy subsection (a) is not before this Court at this juncture.

that renders its provisions internally inconsistent, nor should it subject a trial judge to a mandamus order under circumstances in which his payment of a fixed fee, although it would comply with a portion of a statute, would also result in his violation of another express statutory requirement, here, the requirement under Article 26.05(a) that payment of attorney's fees must be reasonable.

This Court's majority opinion interprets the statutory language in Article 26.05(c) as a requirement that the Collin County local rules be read as permitting only a fixed fee in all cases, regardless of the reasonableness of that fixed fee in any given case, regardless of the reasonableness requirement in Article 26.05(a), and regardless of the fact that the Collin County district judges provided for this type of payment in their local rules and those rules conformed with Article 26.05(b). At the very least, in this case, there are ambiguities inherent in the statutory scheme as a whole and the particular circumstances of this case involving a fixed-fee regime. I, therefore, cannot agree that the trial court was clearly without any discretion to order the challenged payment by relying on Local Rule 4.01(B). *See In re Allen*, 462 S.W.3d at 49-50 ("A ministerial act, by its nature, does not involve the use of judicial discretion; it must be positively commanded and so plainly prescribed under the law as to be free from doubt.").[10]

_____

[10]    This Court's majority opinion suggests that our 1987 opinion in *Smith v. Flack,* and the legislative response to that decision, support the position that Article 26.05 clearly prohibits the type of opt-out rule provided for in Rule 4.01(B). *See Smith,* 728 S.W.2d at 789-92. I disagree with this interpretation of the legislative response to *Smith.* In *Smith*, the underlying facts were distinguishable because, there, the trial judge's order for payment of fees exceeded the maximum rates permitted by the local rules, as compared to the instant case in which the judge has strictly abided by the local

## C. Policy Considerations

Because I conclude that the language in this statute is ambiguous with respect to whether it permits only the two options of fixed fees and ranges of fees or whether it additionally would permit an opt-out variable fee for highly unusual circumstances or manifest need, it is proper for courts to examine extra-textual factors to determine what the Legislature intended by the statutory language. I conclude that, considering the policy implications for this Court's majority opinion's proposed interpretation of the statutory language, the representation of indigent defendants will be negatively impacted and the costs to the counties may ultimately be increased. Such a result fails to comport with the statute's apparent legislative purpose to ensure fair and reasonable payments for appointed counsel. Furthermore, I disagree with the suggestion that this is the Legislature's bad policy so the blame should go to them. Rather, it is this Court's refusal to abide by the Legislature's intent that is causing the unfair outcome in this case.

---

rules. *Id.* at 787. In *Smith*, this Court upheld the trial judge's order by determining that the Board of Judges lacked authority to set forth maximum rates of payment for attorney's fees, noting that Article 26.05 at that time did not expressly authorize the setting of maximum rates. *Id.* at 792. In response to this Court's holding in *Smith*, the Legislature amended Article 26.05 to essentially overturn this Court's decision and permit the local Board of Judges to do the very thing it had attempted to do previously—enact maximum rates. Given the context of the underlying litigation that preceded the legislative amendments to Article 26.05, it appears to me that the amendments were intended to ensure that individual trial judges adhere to the rules enacted by the local boards of judges and that the local boards should be permitted wide discretion, as here, to establish fee schedules that they view as appropriate and reasonable for the courts in their jurisdiction. In short, the Legislature's post-*Smith* amendment of Article 26.05 was to permit local boards to have the authority to set maximum rates for the payment of appointed attorneys, but that grant of authority to set maximum rates cannot be read as a clear mandate that trial judges must strictly adhere to maximum rates in all cases, even when a local board has opted to permit exceptions to the maximum rate to ensure the interests of justice.

## 1. Representation of Indigent Defendants May Be Negatively Impacted

Because the applicable statutes require that attorneys representing indigent defendants be paid according to the same fee schedules as the ones applicable to special prosecutors, this Court's majority opinion effectively decides how this State will compensate attorneys for indigent representation, and thus the policy implications of this case are widespread. As the amicus briefs observe, the payment of attorneys appointed to represent all indigent accused people in Texas likely will be affected by this Court's holding that, when a county has provided for only a fixed fee, then a trial judge has no authority to pay anything other than the fixed fee and he may not consider whether that fixed fee is reasonable under the circumstances or whether there is a manifest necessity for a higher fee. According to relator's pleadings, more than 160 counties across Texas currently employ local rules similar to Rule 4.01(B) that permit payments outside of the fee schedule when a trial judge determines that fees outside of the fixed fees or ranges of fees would be appropriate. But, as a result of the majority opinion's holding today, these provisions are automatically nullified, and local boards of judges will be required to adhere to the listed payment amounts in all cases, regardless of the reasonableness of the fee for the particular circumstances.[11]

---

[11]     For example, Harris County's fee schedule provides that "[a] request to exceed the presumptive maximum [daily or weekly term] will not be considered except upon written request providing adequate justification." Travis County's fee schedule provides, "In an unusual case, taking into account the considerations set forth in Texas Rules of Professional Conduct Rule 1.04(b) the Program Administrator may authorize a fee that is less than or more than the one established by these guidelines." Hidalgo County's fee schedule provides, "For good cause or exceptional circumstances, an appointed attorney may request payment at an hourly rate above the rates specified in subsections (a) and (b) of this Rule, subject to review and approval by the judge presiding over the case as

This Court's majority opinion appears to suggest that it can limit the unjustness of this fixed fee problem to only cases involving special prosecutors because they, unlike indigent defendants, do not have the right to effective assistance of counsel under the federal Constitution and therefore they are not entitled to reasonable fees to ensure that constitutional right. Though there are more responses to that suggestion than available ink and paper, I will focus on two.

First, the issue here is whether the extra-textual consideration of policy implications can give guidance about the legislative intent in interpreting the pertinent statutory language. Does it make any sense at all that the Legislature would say that special prosecutors and appointed defense attorneys should be paid in the same manner, but then in total contradiction, endorse this Court's majority opinion's view that unfair fixed fees really apply only to special prosecutors because defendants have constitutional rights to reasonable funds for effective counsel? If that were the case, then the Legislature would never have stated in Article 2.07 that special prosecutors must be compensated in the same manner as other attorneys representing indigent defendants. *See* TEX. CODE CRIM. PROC. art. 2.07(a), (c). Because this Court is required to examine the policy implications stemming from various

---

specified in Rule 8.02." El Paso County's fee schedule provides, "Payment of a fee in excess of the case maximums will only be made if the case was complex or extended." Denton County's fee schedule provides, "Upon good cause shown, the Court may approve an amount for attorney fees which exceeds the amounts stated above. In making its determination, the Court may consider the time and labor required, the complexity of the case, and the experience and ability of appointed counsel."
*See* TEX. INDIGENT DEF. COMM'N, *Current Attorney Fee Schedules*,
(http://tidc.tamu.edu/public.net/Reports/FeeDocuments.aspx#D) (last visited Nov. 15, 2018).

interpretations of the ambiguous statutory language, I conclude that any ambiguity in the language of Article 26.05 must be resolved in favor of paying both appointed defense counsel and appointed special prosecutors a reasonable fee. Any suggestion that special prosecutors may be treated unfairly in their fee payments while appointed counsel for indigent defendants may not fails to comport with the reasonableness-of-the-fee requirement in Article 26.05(a) and the like-treatment requirement in Article 2.07, both of which reflect the Legislature's clear intent to adequately and fairly compensate all appointed counsel.

Second, assuming this Court's majority opinion is correct that appointed attorneys representing indigent defendants can obtain reasonable fees outside of the fixed fee schedule because the federal Constitution requires effective assistance of counsel, I question how exactly that guarantee would be effectuated. Can you imagine the litigation that would ensue for each appointed attorney who requires a reasonable fee outside of a fixed fee schedule to challenge the lack of a reasonable fee so that the attorney can effectively represent a defendant? Should the appointed attorney do all of the required work up front in defense of a client and then submit a voucher for payment, only to be later denied the payment by the Commissioners Court, as here? Or should a defense attorney challenge the statutory scheme by petition for mandamus before doing the work, only to be told that he has failed to make a record of how the fixed fee is unreasonable in a particular case? It is fanciful to believe that appointed defense attorneys will be able to challenge the reasonableness of a fixed fee in a way that is different or more successful than the petition for mandamus filed by relators

in this case. Again, the whole point of this statutory scheme is to avoid this precise problem.

The whole point is to guarantee that appointed counsel will be paid a reasonable fee in a

manner that is consistent with others who are performing essentially the same function. It is

clear from the statutory scheme as a whole that the Legislature intended for counties to have

the judges collectively agree about fixed fees or ranges of fees for ordinary cases or events,

but in any event for them to pay reasonable fees to appointed attorneys.[12] That is precisely

---

[12]  I note here that the legislative history from the 2001 amendments to Article 26.05 supports this view.  With respect to subsection (c), the amendment added the key language requiring that a fee schedule "shall state reasonable" fees, replacing the former language that had required a fee schedule to simply "include" a fixed rate or minimum and maximum hourly rates, with no reasonableness requirement.  *See* Act of June 14, 2001, S.B. 7, 77th Leg., R.S.; TEX. CODE CRIM. PROC. art. 26.05(c).  The amendment also added the language requiring consideration of "reasonable and necessary overhead costs and the availability of qualified attorneys willing to accept the stated rates" in setting a fee schedule.  *Id.* Both of these amendments to the statute clearly emphasized the reasonableness of fees.  Moreover, the legislative bill analysis supporting these amendments reflects that the Legislature is aware of the type of opt-out provisions at issue here, but it has taken no steps to prevent or eliminate them through statutory amendments.   The bill analysis states,

> Appointed attorneys must be paid a "reasonable attorney's fee" for certain services listed in CCP, art. 26.05. All payments must be made according to a schedule of fees adopted by the county and district criminal court judges in each county and must be paid from the general fund of the county in which the prosecution takes place. In most cases, the state provides no funds to pay for appointed attorneys. However, the state does contribute up to $25,000 per case for attorneys and expenses for habeas corpus appeals of death sentences, a type of appeal that challenges the constitutionality of a conviction.

> Most courts that appoint attorneys for indigent defendants reimburse the lawyers with a combination of fixed fees for handling certain duties, such as a jail visit or a day in court, and an hourly rate for other work. Individual judges decide what rates they will pay. *In most situations, even when counties or judges have a published fee schedule, judges have the discretion to alter the rates paid to court-appointed attorneys.*

House Research Organization, Bill Analysis, S.B. 7, 77th Leg., R.S. (emphasis added).  Given the Legislature's awareness of opt-out provisions such as the one in Local Rule 4.01(B), it seems that, if the Legislature believed that type of provision to be foreclosed by Article 26.05, then it would have

what occurred here. The judges collectively agreed to fixed fees for ordinary cases or events and provided for a trial judge to exercise his discretion to order a reasonable fee for highly unusual events. This approach fits within the policy goals of the Legislature's whole statutory scheme.

The overall goal of the statute is to provide for the payment of all appointed counsel at reasonable rates. I cannot agree that the Legislature's intent was to treat special prosecutors differently from appointed defense attorneys, or to require defense attorneys to go to court to litigate either pre- or post-conviction to be paid a reasonable fee when the fixed fee is inadequate. This Court's interpretation necessarily leads to those conclusions that are wholly inconsistent with the legislative purpose underlying the entire statutory scheme.

## 2. Costs to the County May Increase Rather than Be Controlled

The focus of this Court's majority opinion is the view that this must be done this way because the Legislature was attempting to control costs incurred by counties and without this regulation counties may go bankrupt trying to pay for indigent defense costs. At first, this seems like a plausible argument, but deeper thinkers quickly realize it is a false hypothesis because, even under the majority's interpretation, none of this scheme limits indigent defense costs in any way.

Here, Collin County provided for only fixed fees in its schedule. Its schedule did not include set-forth ranges of fees. Assuming this Court's majority opinion is correct that the

taken some corrective action by amending the statute to prevent such provisions. That it has not done so speaks volumes about its legislative intent in this area.

opt-out provision used by Collin County was impermissible, its fixed fees would have to be considered reasonable in every single case included within its broad categories. No one appears to be arguing that the fixed fee was reasonable here or that it would be reasonable in all cases within the broad categories. Thus, Collin County needed the opt-out provision that is disputed in this case to ensure payment of reasonable fees. Alternatively, Collin County needed a fee schedule with ranges of fees for certain categories or events. As I explain below, I conclude that the current opt-out provision is more fiscally conservative than a fee schedule with ranges of fees.

Assuming a hypothetical fee schedule with set-forth ranges of fees that I discuss next, for those ranges to be reasonable in every possible case, the ranges would be so wide as to be meaningless. For example, a county could set the range for a murder case at a minimum of $1,000 to a maximum of one million dollars in order to account for the highly unusual case where that fee would be manifestly necessary. Having a one-million dollar fee at the outside high range would permit a trial judge to provide a higher fee in an unusual case, but it would also be there and available for all cases as part of the set-forth range of fees. That would likely result in increased costs for counties due to the recognition that the higher end was available for judges for the payment of attorneys that fit within that category of circumstances.

In contrast, under the current schedule that has only fixed fees with the opt-out provision, trial judges are aware that the fixed fee should be utilized in the ordinary course

of events unless there is an unusual need where the fee would result in a manifest injustice, in which case the trial judge should use discretion to assess the appropriate amount of the fee. I conclude that the opt-out provision as described in the instant fee schedule is a more fiscally sensible approach than the hypothetical fee schedule with set-forth ranges of fees because the instant fee schedule limits judges to the fixed fee almost all of the time and permits an exception outside that fixed fee only in narrowly limited circumstances. To permit only set-forth ranges of fees as the sole alternative to fixed fees, I conclude, is more likely to increase costs to the counties rather than to decrease costs.

### 3. This Court's Mistaken New Policy Thwarts Legislature's Good Policy

I disagree that the Legislature is to blame for enacting bad policy because it is instead this Court's refusal to abide by the Legislature's statutory intent that is causing the unfair outcome in this case. The Legislature has already clearly indicated its intent that payments to appointed attorneys must be reasonable in light of "the time and labor required, the complexity of the case, and the experience and ability of the appointed counsel." TEX. CODE CRIM. PROC. art. 26.05(a). Those factors should be considered by this Court in its analysis of this issue, but instead this Court ignores that requirement by permitting fixed fees that do not take these considerations into account in contravention of the express requirements of Article 26.05. Furthermore, here, the local courts have already spoken clearly in Rule 4.01(B) by permitting a variance from the fixed fee for situations where adhering to those fixed rates would be "manifestly inappropriate." The local fee schedule, as written,

acknowledges the necessity of providing reasonable payment in light of the particular circumstances of the case. It is this Court that ignores these clear directives by substituting its own policy ideas in contravention of the relevant statutes and rules. Thus, a suggestion that this Court is merely following the Legislature's directive so any bad policy results are the fault of the Legislature is an unfair attack on the Legislature.

In light of all of these considerations, I conclude that the Commissioners Court failed to establish a clear right to relief under unequivocal, well-settled, and clearly controlling legal principles. *Weeks*, 391 S.W.3d at 122. The conditional order of mandamus relief by the Fifth Court of Appeals against the trial judge was inappropriate, and this Court errs by upholding that order.

### III. Conclusion

The court of appeals erred by holding that the trial judge had a ministerial duty to vacate his order paying the special prosecutors in the underlying case for their second voucher reflecting work they had already performed in accordance with the judge's agreement to pay them at a special rate that the judge had determined was appropriate due to the complexity of the case and the prosecutors' experience and ability. I would sustain relator's complaint that the Fifth Court of Appeals wrongfully ordered the trial court to vacate its payment of the second voucher. Accordingly, I would permit the trial court to enforce its order requiring relator's voucher to be paid so that the special prosecutors can be compensated for the work they have already performed and at the rate that had been agreed

upon and reflected in the trial court's order. For this reason, I respectfully disagree with this Court's majority opinion that permits the lower appellate court's order to remain intact. The Court's holding results in manifest injustice under these circumstances in which the government has agreed to pay an attorney at a particular rate, received those services, and then refused to pay for the services. Because mandamus relief against the trial judge by the Fifth Court of Appeals was the improper remedy for this situation, I respectfully dissent from this Court's judgment upholding the court of appeals's judgment.

Filed: November 21, 2018

Publish